In the

# United States Court of Appeals

### For the Seventh Circuit

No. 15-3654

ERIC TROTTER, CONNIE JACKSON, and CAILA PETRIE,

*Plaintiffs-Appellants*,

*v.*

HARLEYSVILLE INSURANCE COMPANY,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
Nos. 14 C 9834, 14 C 9837 & 14 C 9844 — **Frederick J. Kapala**, *Judge*.

ARGUED APRIL 18, 2016 — DECIDED MAY 10, 2016

Before EASTERBROOK and SYKES, *Circuit Judges*, and
ADELMAN, *District Judge*.[*]

ADELMAN, *District Judge*. On July 14, 2011, Donna Powers
drove through a stop sign and caused a four-vehicle acci-
dent. The plaintiffs in this case occupied one of the vehicles
involved in the accident and suffered personal injuries. Eric

[*] Of the Eastern District of Wisconsin, sitting by designation.

Trotter was the driver of the vehicle; Connie Jackson and Caila Petrie were passengers. Powers was insured under a personal automobile policy with liability limits of $250,000 per person and $500,000 per accident. The plaintiffs eventually settled with Powers's insurer for the per-accident limit of $500,000. Under the settlement, Trotter received the per-person maximum of $250,000 and Jackson and Petrie split the remaining $250,000, with Jackson receiving $238,000 and Petrie receiving $12,000.

The plaintiffs contend that the amounts they received under the Powers policy did not make them whole. Thus, after exhausting the limits of that policy, they each submitted claims to Harleysville Insurance Company, the defendant in this case. Harleysville had issued Trotter a personal automobile policy that included underinsured motorist coverage. The policy provides that Trotter and any occupant of his vehicle is an "insured" for purposes of that coverage. However, the declaration page of the policy states that underinsured motorist coverage is limited to $500,000 for "each accident." Because the plaintiffs had together already recovered $500,000 under the Powers policy, Harleysville denied their claims for underinsured motorist coverage, concluding that, for purposes of the Harleysville policy, Powers was not an "underinsured motorist."

The plaintiffs contend that Harleysville's policy does not unambiguously state that underinsured motorist coverage is limited to $500,000 per accident. Instead, they argue, the policy can reasonably be construed to mean that the $500,000 policy limit applies on a per-person, rather than a per-accident, basis. Under this construction, each plaintiff could, depending on the extent of his or her damages, potentially

recover from Harleysville the difference between $500,000 and the amount he or she received from Powers's insurer. Thus, Trotter could recover up to $250,000 from Harleysville, Jackson up to $262,000, and Petrie up to $488,000. The plaintiffs contend that if the policy is ambiguous in this regard, then the ambiguity must be resolved in their favor, as under Illinois law ambiguities in an insurance policy must be resolved in favor of the insured.

When Harleysville refused to accept the plaintiffs' construction of the policy, each plaintiff filed a separate suit against it in Illinois state court. Harleysville removed the cases to the Northern District of Illinois under the diversity jurisdiction, *see* 28 U.S.C. § 1332, and the district court consolidated the three cases into a single action. The parties then filed cross-motions for summary judgment on the issue of whether the insurance policy is ambiguous. The district court concluded that the policy is not ambiguous and that the limit of underinsured motorist coverage is $500,000 per accident. It entered summary judgment in favor of Harleysville and denied the plaintiffs' motion for summary judgment. The plaintiffs appeal.

We review the district court's grant of summary judgment *de novo*. *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). The parties agree that Illinois substantive law applies. Under Illinois law, a provision in an insurance policy is ambiguous only when it is susceptible to more than one reasonable interpretation. *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004 (Ill. 2010). Where an ambiguity does exist, the court will construe the policy strictly against the insurer and liberally in favor of coverage for the insured. *Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, 860 N.E.2d 280, 286 (Ill. 2006).

The Harleysville policy comprises a declaration page and a number of forms and endorsements. Two endorsements relate to underinsured motorist coverage. One is entitled "Underinsured Motorists Coverage—Illinois"; the other is entitled "Single Underinsured Motorists Limit." We will refer to these endorsements as the "Illinois" endorsement and the "single limit" endorsement.

The Illinois endorsement is the form that adds underinsured motorist coverage to the policy. It contains the insuring agreement stating that Harleysville will provide underinsured motorist coverage; it also contains definitions of policy terms, exclusions, and various other terms and conditions that apply to that coverage. Included in the Illinois endorsement is a section entitled "LIMIT OF LIABILITY." Paragraph A of that section provides as follows:

> The limit of liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.
>
> This is the most we will pay regardless of the number of:
>
> 1. "Insureds;"
>
> 2. Claims made;
>
> 3. Vehicles or premiums shown in the Schedule or Declarations; or
>
> 4. Vehicles involved in the accident.

The above language means that the policy's underinsured motorist coverage is subject to both per-person and per-

accident limits. That is, it means that Harleysville will pay no more than the per-person limit to any one person injured in an accident, and that, no matter how many people are injured in a single accident, it will pay no more than the per-accident limit.

The sole function of the single-limit endorsement is to remove the per-person limit on underinsured motorist coverage. It provides as follows:

> Paragraph A. of the Limit of Liability Provision in the Underinsured Motorists Coverage Endorsement is replaced by the following:
>
> LIMIT OF LIABILITY
>
> The limit of liability shown in the Schedule or in the Declarations for Underinsured Motorists Coverage is our maximum limit of liability for all damages because of "bodily injury" resulting from any one accident. This is the most we will pay regardless of the number of:
>
> 1. "Insureds";
>
> 2. Claims made;
>
> 3. Vehicles or premiums shown in the Declarations; or
>
> 4. Vehicles involved in the accident.

The single-limit endorsement also has a schedule, which contains a blank line that can be filled in to identify the policy limit for each accident. The line in the schedule was left blank. However, the declaration page of the policy states that coverage for "underinsured motorist bodily injury" is limited to "500,000 each accident." Thus, in accordance with the first sentence under "LIMIT OF LIABILITY," which directs the reader to the limit of liability "shown in the Schedule or in the Declarations," the limit of liability shown on the declaration page applies.

When the Illinois endorsement, the single-limit endorsement, and the declaration page are read together, it is clear that underinsured motorist coverage is limited to $500,000 per accident. Although the Illinois endorsement states that underinsured motorist coverage is subject to both per-person and per-accident limits, the single-limit endorsement removes the per-person limit. The declaration page then identifies the per-accident limit as $500,000.

In arguing that the policy is ambiguous, the plaintiffs point to various aspects of the policy language that they believe create uncertainty over which "limit of liability" paragraph is controlling—the one in the Illinois endorsement or the one in the single-limit endorsement. We conclude that the policy is unambiguous and that the paragraph in the single-limit endorsement controls. But even if there were ambiguity over which paragraph is controlling, we could not resolve the ambiguity in a way that removes the per-accident limit. That is because *both* paragraphs state that coverage is subject to a $500,000 per-accident maximum, regardless of the number of insureds involved in the accident. The only difference between the two paragraphs is that the one in the Illinois endorsement contains a per-person limit in addition to the per-accident limit. Thus, even if we thought that an ambiguity in the policy language required that we disregard the single-limit endorsement and enforce the Illinois endorsement as written (which we do not), the limit for underinsured motorist coverage would still be $500,000 per accident.

For these reasons, the judgment of the district court is AFFIRMED.