In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-1938

AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,

*Plaintiff-Appellee,*

*v.*

ROBERT SHOCKLEY, JR.,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 18 C 4495 — **Robert W. Gettleman**, *Judge.*

———————————

ARGUED FEBRUARY 10, 2021 — DECIDED JUNE 28, 2021

———————————

Before MANION, KANNE, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* This insurance dispute stems from
Robert Shockley, Jr., filing a civil complaint in Illinois state
court. The complaint alleged Shockley was severely injured
after being thrown from (and run over by) a golf cart driven

by a St. Charles Farms ("SFC")[1] employee. Shockley sued SFC and its employee for negligence. In response, SFC's insurer American Bankers Insurance Company of Florida filed suit in federal court seeking a declaratory judgment that it has no duty to defend or indemnify SFC or its employee in the underlying lawsuit. The district court granted American's motion for summary judgment. Because the district court erred in interpreting the insurance policy, we reverse and remand.

## I. Background

### A.      The Business

SFC operated a horse farm and equestrian center in St. Charles, Illinois. SFC's business activities included maintaining, training, and boarding horses. It also provided riding lessons for a fee. SFC hosted shows and events both on and off its property. One type of off-site event was trail riding, which had previously occurred at different forest preserves. SFC held off-site events about once a month or less, with trail-riding events approximately three times a year. Sometime during the operation of the business, SFC attended a festival at the Kane County Fairgrounds.

### B.      Insurance Policy

SFC and American entered into an insurance contract, labeled as a farmowner policy, with coverage running from June 2016 through June 2017. The policy declarations describe the insured premises as "42W 690 North Ave, St. Charles, Illinois." The second page of declarations provides the coverage

---

[1] SFC is an Illinois limited liability company that operates St. Charles Farms. It appears from the record St. Charles Farms is no longer in business.

limits for "Commercial Liability Coverage." The final page of declarations, reproduced in relevant part below,[2] includes a provision identifying "All known exposures" related to "Commercial Liability."

Commercial Liability    If this is checked ____ coverage does not apply

All known exposures at the beginning of the Policy period have been identified below.

| Classification | Code | Rating Basis | Rate | Premium |
|---|---|---|---|---|
| Stables, Boarding | 16402 | VARIOUS | INCLUDED $ | 855 |
| Riding Clubs & Academies | 16200 | VARIOUS | INCLUDED | 2,284 |
| Saddle Animals, Comm'l | 16401 | VARIOUS | INCLUDED | 289 |
| Instructors Liab. | 08201 | VARIOUS | INCLUDED | 134 |

The policy includes an additional insured endorsement that states it "changes the Commercial Liability Coverages provided by this policy." The endorsement was issued to the Kane County Fairgrounds.[3] It amends the definition of "insured" to include the Kane County Fairgrounds.

The policy has a number of coverage provisions following a table of contents labeled "Farm Coverage." Those coverage provisions relate to property such as barns, other buildings, and machinery. The provisions include incidental property coverages and perils coverages.

The coverage provision at issue in this case is coverage L. Coverage L follows a subsequent table of contents labeled

---

[2] The formatting of the reproduction is slightly different than the original contract for easier readability.

[3] The insurance policy states "Kane Coutny Farigrounds," which is clearly an accidental misspelling. On brief, both parties refer to the additional insured endorsement as relating to the Kane County Fairgrounds.

"Commercial Liability Coverage (Farm Premises and Operations)." Coverage L provides coverage for bodily injury and property damage. The coverage states in relevant part:

> "We" pay all sums which an "insured" becomes legally obligated to pay as "damages" due to "bodily injury" or "property damage" to which this insurance applies. The "bodily injury" or "property damage" must be caused by an "occurrence" and arise out of the ownership, maintenance, or use of the "insured premises" or operations that are necessary or incidental to the "insured premises".

Within the same table of contents as coverage L, the contract contains a section setting forth supplemental coverages. One supplemental coverage is for motorized vehicles and watercraft. It provides coverage for bodily injury or property damage

> arising out of: … a "motorized vehicle" which is designed only for use off public roads and which is used to service the "insured premises."

> (However, this coverage does not apply to "bodily injury" or "property damage" which results from a "motorized vehicle" while used for recreational purposes away from the "insured premises".)

Exclusion six of the policy clarifies that there is no coverage for bodily injury or property damage arising from use of a motorized vehicle except as provided by the supplemental coverage referenced above.

### C.      Underlying Lawsuit[4]

Shockley filed a negligence lawsuit in the Circuit Court of Cook County. According to the complaint, on November 11, 2016, Ashley Ratay, an employee of SFC, transported horses, equipment, and an SFC golf cart from the farm to Barrington Hills Riding Center. The riding center is located at 361 Bateman Road in the Village of Barrington Hills, approximately fifteen miles from SFC's property.

While at the riding center, Ratay was responsible for supervising those riding SFC horses. She did so while driving the SFC golf cart. At some point, Shockley was a passenger in the golf cart. With Shockley in the passenger seat, Ratay used the golf cart to chase a horse. She quickly drove the cart off the mowed path and onto a grassy field. The cart hit uneven ground, causing Shockley to fly out of the vehicle and land on the ground. Ratay ran over his leg with the golf cart.

Shockley sought to hold Ratay liable for his injuries. He also sued SFC under a respondeat superior theory.

### D.      Federal Proceedings

After Shockley filed the underlying lawsuit, American filed a declaratory judgment in federal court against SFC,

---

[4] We do not opine on the merits of the facts alleged. Rather, we set forth the facts as stated in the complaint for the purpose of determining whether there is a duty to defend. *See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 314 (7th Cir. 2020) ("To determine whether an insurer has a duty to defend, a court compares the underlying complaint's allegations (liberally construed in the insured's favor) to the policy's language." (quoting *Scottsdale Ins. Co. v. Columbia Ins. Group, Inc.*, 972 F.3d 915, 919 (7th Cir. 2020))).

Ratay, and Shockley.[5] American alleged it had no duty to de-
fend or indemnify SFC in the underlying lawsuit since the in-
jury occurred at the Barrington Hills Riding Center and, alter-
natively, based on exclusion six of the insurance policy.

American filed a motion for summary judgment. Shockley
responded and filed a cross-motion for summary judgment.
The district court found the insurance policy was a far-
mowner policy rather than a commercial general liability
("CGL") policy. It granted American's motion for summary
judgment and denied Shockley's cross-motion for summary
judgment. After an initial appeal, this Court remanded the
case for the district court to enter a judgment declaring the
rights and duties of the parties. The district court declared
American has no duty to defend or indemnify SFC in the un-
derlying lawsuit and entered judgment accordingly.

## II.  Discussion

### A.      Jurisdiction and Standard of Review

We have jurisdiction over this appeal under 28 U.S.C.
§ 1291. The district court had subject matter jurisdiction based
on diversity of citizenship. *See* 28 U.S.C. § 1332(a)(1). The par-
ties agree that Illinois substantive law applies.[6]

We review the district court's grant of summary judgment
*de novo* and view the facts in the light most favorable to Shock-
ley, the non-moving party. *Sterling Nat'l Bank v. Block*, 984 F.3d
1210, 1217 (7th Cir. 2021) (quoting *Henry v. Hulett*, 969 F.3d
769, 776 (7th Cir. 2020) (en banc)). The interpretation of an

---

[5] Neither SFC nor Ratay appeared or answered the complaint. Shock-
ley was the only participating defendant.

[6] The Seventh Circuit decisions cited in this opinion apply Illinois law.

insurance contract is a legal issue that may be decided on a motion for summary judgment. *Twenhafel v. State Auto Prop. & Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009). Summary judgment is proper when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Sterling*, 984 F.3d at 1217.

**B.      Duty to Defend**

In Illinois, the duty to defend is broader than the duty to indemnify. *Coyle*, 983 F.3d at 314. We compare the allegations of the underlying complaint to the language of the policy to determine whether there is a duty to defend. *Id.* If the facts alleged in the complaint fall within, or potentially fall within, the policy coverage, the insurer must defend the insured. *Id.* "Any doubts about the duty to defend are resolved in favor of the insured." *Id.* (quoting *Scottsdale*, 972 F.3d at 919–20).

Here, in comparing the underlying complaint to the insurance policy, the parties do not dispute what facts were alleged. Instead, at issue is the scope of coverage of the insurance policy, a pure question of law. To determine the scope of the policy, traditional principles of contract interpretation apply. *See Murbach v. Noel*, 343 Ill. App. 3d 644, 798 N.E.2d 810, 812 (Ill. App. 2003). "Under Illinois law, the goal of contract interpretation is to ascertain the parties' intent and, in doing so, we first look to 'the plain and ordinary meaning' of the contract language." *Selective Ins. Co. of South Carolina v. Target Corp.*, 845 F.3d 263, 267 (7th Cir. 2016) (quoting *Aeroground, Inc. v. CenterPoint Props. Tr.*, 738 F.3d 810, 813 (7th Cir. 2013)). We interpret the contract "as a whole, viewing each part in light of the others." *Id.* (quoting *Aeroground*, 738 F.3d at 813). Each clause and word must be given effect to the extent possible so that no term is rendered meaningless. *Id.*

And if the contract is not clear on its face? Whether a contract is ambiguous is a legal question for the courts. *See Dash Messenger Serv., Inc. v. Hartford Ins. Co. of Illinois*, 221 Ill. App. 3d 1007, 582 N.E.2d 1257, 1260 (Ill. App. 1991). If ambiguous, courts strictly construe the policy against the insurer and in favor of the insured. *Trotter v. Harleysville Ins. Co.*, 821 F.3d 916, 918 (7th Cir. 2016). A provision is ambiguous "only when it is susceptible to more than one reasonable interpretation." *Id.*

When interpreting an insurance contract, we account for "the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." *Crum & Forster Managers Corp. v. Resol. Tr. Corp.*, 156 Ill. 2d 384, 620 N.E.2d 1073, 1078 (Ill. 1993).

*1. Type of Insurance at Issue*

Consistent with Illinois precedent, the initial inquiry guiding our analysis is which type of insurance contract the parties reached. An examination of the declarations and insuring agreements reveals several ambiguities in the policy. It is unclear whether the policy was intended as a farmowner or CGL policy. We resolve these ambiguities against American and interpret the policy as a CGL policy.

As for the specific ambiguities: the policy is labeled as a farmowner policy. Farmowner policies function like homeowner policies, linking coverage to an insured premises. *See* STEVEN PLITT ET AL., 9A COUCH ON INSURANCE § 128:33 (3d ed. 2021); Jane M. Draper, Annotation, *Farmowners' Liability Insurance Risks and Coverage*, 93 A.L.R.3d 472 (1979). Consistent with the policy's label, the declarations set forth the insured

premises as "42W 690 North Ave, St. Charles, Illinois," the location of SFC's horse farm. Coverage L, the relevant coverage provision, reflects a link between coverage and the insured premises, as well. It states that in order to be covered, bodily injury and property damage "must be caused by an 'occurrence' and arise out of the ownership, maintenance, or use of the 'insured premises' or operations that are necessary or incidental to the 'insured premises.'" But we do not read these provisions in isolation.

The contract also contains language suggesting it is a CGL policy. "[A] CGL policy typically protects against claims for injuries or losses arising from the insured's business operations." *Indiana Ins. Co. v. Royce Realty & Mgmt., Inc.*, 2013 IL App (2d) 121184, 990 N.E.2d 1244, 1251 (Ill. App. 2013). First, the declarations specify business risks for which there is commercial liability coverage. The relevant commercial liability provision states, "All known exposures at the beginning of the Policy period have been identified below." It then identifies coverage for stables and boarding; riding clubs and academies; commercial saddle animals; and instructors liability. There is no mention of the insured premises in this portion of the declarations.

Next, the additional insured endorsement to the Kane County Fairgrounds renders the contract ambiguous because it also suggests the parties contemplated coverage beyond SFC's premises. The endorsement amends the definition of "insured" to include the Kane County Fairgrounds. The Fairgrounds entity is covered with respect to designated activities[7] relating to SFC's operations, or premises rented or

---

[7] We do not state the specific activities covered because puzzlingly, the relevant contractual schedule does not set forth any designated

owned by SFC. The contract also specifies that the endorse-
ment "changes the Commercial Liability Coverages provided
by this policy." Considering the Fairgrounds would be cov-
ered for SFC's *operations*, not merely on its property, it follows
that the endorsement contemplated application to CGL cov-
erage provisions. This, in combination with evidence SFC op-
erated its business both on and off its property further ampli-
fies the tension between the premises and CGL language in
viewing the entire contract.

Finally, the insurance coverage provisions are separated
into two sections—one for farm coverage and one for com-
mercial liability coverage. The coverage provision at issue,
Coverage L, is within the commercial liability section, rather
than the farm coverage section. The commercial liability sec-
tion is preceded by a table of contents labeled, "Commercial
Liability Coverage (Farm Premises and Operations)." This ti-
tle is in tension with the premises-linked language in Cover-
age L. Not only does the title mention commercial liability,
but it explicitly mentions farm operations, not merely farm
premises.

In response, American argues commercial liability with an
insured premises is not the same as a commercial general lia-
bility policy. It cites no authority for this proposition. The
main issue with this argument is many of the provisions
which suggest commercial general liability or are ambiguous
as to the type of policy make no mention of the insured prem-
ises. The contract must clearly link the concepts of commercial

activity. The record does little to illuminate what activities were contem-
plated. It does reflect SFC attended a festival at the Kane County Fair-
grounds.

liability and any insured premises requirement, but at best, the contract is ambiguous on the matter.[8]

The parties each cite cases compelling an outcome in their favor. The disparity in outcomes results from the type of insurance at issue in the specific case cited. Shockley cites CGL cases in which coverage is broadly construed in the insured's favor. *E.g.*, *Royce*, 990 N.E.2d at 1251–52; *Pekin Ins. Co. v. Wilson*, 237 Ill. 2d 446, 930 N.E.2d 1011, 1023 (Ill. 2010). American cites cases interpreting homeowner policies that link coverage to the insured premises. *E.g.*, *U.S. Fire Ins. Co. v. Schnackenberg*, 88 Ill. 2d 1, 429 N.E.2d 1203, 1204–06 (Ill. 1981); *see also Cobbins v. Gen. Fire & Life Assurance Corp.*, 53 Ill. 2d 285, 290 N.E.2d 873, 875, 878 (Ill. 1972) (narrowly interpreting a premises-linked insurance contract after finding it unambiguous). Having already established the contract is ambiguous, we construe it against American.

---

[8] Further, the terms "commercial liability" and "commercial general liability" have been used interchangeably in Illinois caselaw. *See, e.g.*, *Greenwich Ins. Co. v. RPS Prods., Inc.*, 379 Ill. App. 3d 78, 882 N.E.2d 1202, 1205–06 (Ill. App. 2008) (explaining RPS sought commercial liability insurance coverage and was issued three commercial general liability policies); *Northbrook Prop. & Cas. Ins. Co. v. Applied Sys., Inc.*, 313 Ill. App. 3d 457, 729 N.E.2d 915, 917–18, 923 (Ill. App. 2000) (referring to one of the insurance policies between the parties first as a "commercial liability insurance polic[y]," then as "a commercial general liability insurance policy ("CGL Policy")," and noting the insured was a sophisticated entity, "having obtained more than one commercial liability policy"); *Oakley Transp., Inc. v. Zurich Ins. Co.*, 271 Ill. App. 3d 716, 648 N.E.2d 1099, 1106–07 (Ill. App. 1995) (describing the parties' insurance policy as a commercial general liability policy and explaining that "[s]tandard commercial liability policies are issued to cover all hazards incident to the operation of a business with the exception of certain excluded risks").

*2. Allegations of Underlying Complaint v. Contract Language*

The underlying complaint alleges SFC employee Ratay was negligent while operating an SFC golf cart. She operated the cart at the Barrington Hills Riding Center as a part of her obligation to supervise riders there. The complaint specifically alleges she was operating the golf cart "in furtherance of the business" of SFC. The approximate fifteen-mile distance between SFC's property and the Riding Center does not pose a bar to coverage given the contract can be reasonably interpreted as extending coverage to the ordinary risks inherent in SFC's business. SFC is not a typical farm. It is a horse farm and equestrian center, conducting activities on and off its premises. American knew, or should have known, that fact, considering it extended an additional insured endorsement relating to SFC's operations to the Kane County Fairgrounds; assessed business risks including activities that could occur off-premises without linking coverage for those activities to the insured premises; and included commercial liability coverage for SFC's operations in the contract.

When viewing the contract as a CGL policy, the underlying complaint sufficiently invokes the language of the policy. Coverage L provides coverage for applicable bodily injury. The provision states that the bodily injury must "arise out of the ownership, maintenance, or use of the 'insured premises' or operations that are necessary or incidental to the 'insured premises'." Illinois courts have consistently found that the language "arising out of" is a broad and vague phrase which "must be liberally construed in favor of the insured." *Dash*, 582 N.E.2d at 1262. It is satisfied by a "but for" causal connection. *Id*. Shockley's bodily injury fits this provision because it arises out of SFC's business operations. But for SFC's use of

the premises as an equestrian center, Shockley would not have been injured at an SFC event. Consequently, the allegations in the underlying complaint sufficiently invoke Coverage L.

The other factors Illinois courts consider also support this conclusion. The risks undertaken and purchased were "[a]ll known exposures" of the business: stables, boarding, riding clubs and academies, commercial saddle animals, and coverage for instructors liability. Without a link to the insured premises at that juncture, it would have been reasonable for SFC to anticipate coverage at an off-site riding event where an SFC instructor was in charge of observing riders; an accident in this context was an ordinary business risk. Last, the purpose of the entire contract was to insure SFC's horse farm—both the property and the business. SFC did not operate a typical grain or crop farm. The nature of its equestrian business took place on and off premises. Shockley's complaint alleges enough to invoke the insuring agreement in the contract between American and SFC.

*3. Exclusion Six*

American argues even if the policy is construed as a CGL policy, exclusion six applies and there is no coverage. "It is the insurer's burden to affirmatively demonstrate the applicability of an exclusion." *Pekin Ins. Co. v. Miller*, 367 Ill. App. 3d 263, 854 N.E.2d 693, 697 (Ill. App. 2006). Exclusions are construed against the insurer and "liberally in favor of the insured." *Id.* Exclusion six provides there is no coverage for bodily injury arising out of the ownership, operation, or use of a motorized vehicle "except as provided under Supplemental Motorized Vehicles and Watercraft Coverage."

American argues since a golf cart is a motorized vehicle, there is no coverage.

However, the supplemental motorized vehicle coverage does arguably provide coverage. American will pay for bodily injury arising out of "a 'motorized vehicle' which is designed only for use off public roads and which is used to service the 'insured premises.'" Immediately following the insured premises requirement in this provision is a parenthetical stating, "(However, this coverage does not apply to 'bodily injury' or 'property damage' which results from a 'motorized vehicle' while used for recreational purposes away from the 'insured premises'.)." The parenthetical is important because it creates ambiguity, once again compelling construction against American.

The complaint alleges bodily injury resulting from use of a motorized vehicle (golf cart) which was used away from SFC's property. However, the parenthetical states there is no coverage when the vehicle is used for *recreational* purposes, implying there *is* coverage when used for business purposes. *See West Bend Mut. Ins. Co. v. DJW-Ridgeway Bldg. Consultants, Inc.*, 2015 IL App (2d) 140441, 40 N.E.3d 194, 205 (Ill. App. 2015) (*expressio unius est exclusio alterius*). Thus, American's argument the complaint does not allege the golf cart was used to service the insured premises is ineffectual. The complaint does allege the golf cart was being used for business purposes. This allegation is sufficient to trigger the supplemental motorized vehicle coverage.

For these reasons, American has a duty to defend.

## C.    Duty to Indemnify

The duty to indemnify is narrower than the duty to defend. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 607 N.E.2d 1204, 1221 (Ill. 1992). The duty to indemnify is an insurer's duty "to reimburse the insured for losses it incurs directly or to pay sums that the insured becomes legally obligated to pay others." *Keystone Consol. Indus., Inc. v. Emps. Ins. Co. of Wausau*, 456 F.3d 758, 762 (7th Cir. 2006). "[A] lawsuit may be sufficient to trigger an insurer's duty to indemnify, [but] it is not a *necessary* condition under Illinois law." *Id.* The duty applies when the insured's claim "actually falls within the scope of coverage." *Madison Mut. Ins. Co. v. Diamond State Ins. Co.*, 851 F.3d 749, 753 (7th Cir. 2017).

However, under the *Peppers* doctrine, a court considering a declaratory judgment generally cannot "decide issues of ultimate fact that could bind the parties to the underlying litigation." *State Farm Fire & Cas. Co. v. John*, 2017 IL App (2d) 170193, 80 N.E.3d 679, 686 (Ill. App. 2017) (quoting *Allstate Ins. Co. v. Kovar*, 363 Ill. App. 3d 493, 842 N.E.2d 1268, 1275 (Ill. App. 2006)); *see generally Maryland Cas. Co. v. Peppers*, 64 Ill. 2d 187, 355 N.E.2d 24, 30 (Ill. 1976) (setting forth the doctrine). "In other words, the question of whether the insurer has a duty to indemnify the insured for a particular liability is only ripe for consideration if the insured has already incurred liability in the underlying claim against it." *Outboard Marine*, 607 N.E.2d at 1221.

We refuse to reach the merits of the duty to indemnify because such a determination would require us to adjudicate facts in Shockley's underlying lawsuit. That portion of American's claim is to be dismissed, without prejudice, as premature at this stage. *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d

823, 833–34 (7th Cir. 1992); *Tews Funeral Home, Inc. v. Ohio Cas. Ins. Co.*, 832 F.2d 1037, 1047 (7th Cir. 1987).

### III.  Conclusion

The insurance contract between SFC and American is ambiguous. In Illinois, ambiguities are resolved against the insurer and in favor of the insured. Further, the issue of duty to indemnify is premature until the underlying facts of Shockley's claim have been properly adjudicated. Thus, we REVERSE the court's determination on the duty to defend and REMAND with directions for the district court to enter summary judgment in favor of Shockley. We VACATE the court's determination on the duty to indemnify and REMAND for dismissal without prejudice on that claim.