In the

# United States Court of Appeals

## For the Seventh Circuit

DRUCO RESTAURANTS, INC.,

*Plaintiff-Appellee,*

No. 13-3489          *v.*

STEAK N SHAKE ENTERPRISES, INC.,
*et al.,*

*Defendants-Appellants.*

PEOPLE SALES & PROFIT
COMPANY, INC.

*Plaintiff-Appellee,*

No. 13-3490          *v.*

STEAK N SHAKE ENTERPRISES, INC.,

*Defendant-Appellant.*

SCOTT'S S&S INC.,

*Plaintiff-Appellee,*

No. 13-3491          *v.*

STEAK N SHAKE ENTERPRISES, INC.,
*et al.,*

*Defendants-Appellants.*

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 1:13-cv-00560-LJM-DML, 1:13-cv-00654-LJM-DML
1:13-cv-00655-LJM-DML — **Larry J. McKinney**, *Judge*

ARGUED MAY 19, 2014 — DECIDED AUGUST 29, 2014

Before ROVNER, WILLIAMS, and TINDER, *Circuit Judges.*

ROVNER, *Circuit Judge.* At issue in this appeal is whether a franchisor may compel several of its franchisees to engage in nonbinding arbitration of diversity claims that the franchisees brought in federal court. The district court refused to stay the franchisees' lawsuits and declined to compel arbitration. We affirm.

## I.

Steak n Shake owns and operates 415 eponymous restaurants that feature hamburgers and milkshakes, among other items.[1] The company also grants franchises for the operation of Steak n Shake restaurants by others, and there are approximately one hundred franchises currently operating. Druco Restaurants, Inc. ("Druco") operates two Steak n Shake restaurants in Missouri under franchise agreements signed in 2001 and 2004. People Sales & Profit Company, Inc. ("PSPC")

---

[1]  Steak n Shake Operations, Inc. runs the company's non-franchised restaurants. The entity also granted franchises until 2005. After a restructuring in 2005, Steak n Shake Operations, Inc. assigned all of its franchise contracts to Steak n Shake Enterprises, Inc., and that company has acted as the franchisor of the brand since that time. For the purposes of this appeal, these Indiana companies are the same and we will refer to them together as Steak n Shake.

operates five Steak n Shake restaurants in Georgia. Franchise agreements for four of the restaurants were signed in 2007. PSPC acquired its fifth franchise in 2009 for a Brunswick, Georgia restaurant from another franchisee that had signed its agreement with Steak n Shake in 1995. Because that contract is markedly different from the others, we will call it the "Brunswick Agreement." Finally, Scott's S&S Inc. ("Scott's") operates a single restaurant in Pennsylvania under a franchise agreement signed in 2006. We will refer to Druco, PSPC and Scott's together as the Franchisees or the plaintiffs.

According to the plaintiffs, since 1939, all Steak n Shake franchisees have enjoyed the right to set their own menu prices and participate in corporate pricing promotions at their option. After a corporate takeover in 2010, Steak n Shake enacted a new pricing and promotion policy that requires all the Franchisees to adhere to company pricing on every menu item and to participate in all corporate promotions. Because the Franchisees are also required to purchase all of their products from a single distributor at a price negotiated by Steak n Shake, this new policy allows Steak n Shake to control the purchase and sale price for every item the Franchisees sell. The policy had an adverse effect on revenues, and so the Franchisees filed suit in federal court in Indiana seeking a declaratory judgment that, under the terms of their franchise agreements, they may set their own prices and are not required to participate in corpo-

rate promotions.[2] The Franchisees raised additional claims but none are relevant to the appeal.

Approximately one month after the Franchisees filed their lawsuits, Steak n Shake adopted an arbitration policy requiring the Franchisees to engage in nonbinding arbitration at Steak n Shake's request. Shortly after adopting the policy, Steak n Shake moved to stay the federal lawsuits filed by the Franchisees and for an order compelling nonbinding arbitration of the disputes. The district court denied the motion to stay and refused to compel arbitration. Although each franchise agreement (except the Brunswick Agreement) contained a clause in which Steak n Shake "reserve[d] the right to institute at any time a system of nonbinding arbitration or mediation," the district court concluded that any agreement to arbitrate was illusory. The court noted that there was no limit on Steak n Shake's ability to arbitrate (or avoid arbitration) on its own whim. Because performance of the clause was entirely optional and because Steak n Shake retained the ability to terminate its system or arbitration at any time, the court concluded the clause was illusory and unenforceable. In the alternative, the court found that Steak n Shake's arbitration policy applied by its own terms only to prospective lawsuits and not to suits already pending when the company decided to implement the policy. Finally, the court held that the nonbinding arbitration or mediation contemplated by the franchise agreements did not constitute "arbitration" under the Federal Arbitration Act.

---

[2]  Each of the Franchisees filed its own lawsuit and the cases were then consolidated for decision in the district court. The cases are similarly consolidated on appeal.

For the Brunswick Agreement, the court simply noted that it contained no language implicating arbitration and so there was no basis to grant a stay or compel arbitration in that dispute. The court therefore denied all of Steak n Shake's motions to stay and to compel arbitration. Steak n Shake appeals.

## II.

On appeal, Steak n Shake contends that the district court erred in concluding that the arbitration clauses in the franchise agreements were illusory under Indiana law. Steak n Shake also maintains that its arbitration policy applies to disputes that were pending at the time the company adopted the policy. Finally, Steak n Shake urges us to conclude that nonbinding arbitration fits comfortably within the FAA's definition of arbitration. We review *de novo* a district court's grant or denial of a motion to compel arbitration. *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012); *Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 480 (7th Cir. 2010). We review any findings of fact for clear error. *Lumbermens*, 623 F.3d at 480.

## A.

Each of the franchise agreements contains a provision for venue and dispute resolution. The Druco franchise contracts provide:

> Venue/Dispute Resolution. Minn. Stat. §80C.21 and Minn. Rule 2860.4400J prohibit us from requiring litigation to be conducted outside Minnesota. In addition, nothing in the offering circular or agreement can abrogate or reduce any of your rights as

> provided for in Minnesota Statutes, Chapter 80C, or your rights to any procedure, forum, or remedies provided for by the laws of the jurisdiction. The Company reserves the right to institute at any time a system of nonbinding arbitration or mediation. Any arbitration under this Agreement shall be held in a forum in the City of Indianapolis, State of Indiana. The Franchisee will be obligated to participate in such system, at the Company's request, in the event of a dispute. The Federal Arbitration Act applies to the arbitration forum clauses contained in this Agreement.

Druco Dkt., R. 1-4, 1-5. A later addendum corrected the mistaken references to Minnesota by revising the paragraph "to replace the word 'Minnesota' with the word 'Missouri' wherever located and to delete all references to Minnesota statutes."

Four of the PSPC contracts and the Scott's contract contain the following language:

> **Venue/Dispute Resolution.** ANY AND ALL ACTIONS AND OTHER LEGAL PROCEEDINGS ARISING UNDER THIS AGREEMENT SHALL BE FILED AND MAINTAINED ONLY IN A STATE OR FEDERAL COURT OF COMPETENT JURISDICTION LOCATED IN THE STATE OF INDIANA, AND THE PARTIES HEREBY CONSENT TO THE JURISDICTION AND VENUE OF SUCH COURTS SOLELY FOR THE PURPOSE OF RESOLUTION OF ANY SUCH DISPUTES. Franchisee and Company

acknowledge that the parties' agreement regarding applicable state law and forum set forth in sections above provide each of the parties with the mutual benefit of uniform interpretation of this Agreement and any dispute arising out of this Agreement or the parties' relationship created by this Agreement. Each of Franchisee and Company further acknowledge the receipt and sufficiency of mutual consideration for such benefit. The Company reserves the right to institute at any time a system of nonbinding arbitration or mediation. Any arbitration under this Agreement shall be held in a forum in the City of Indianapolis, State of Indiana. The Franchisee will be obligated to participate in such system atthe [sic] Company's request, in the event of a dispute. The Federal Arbitration Act applies to the arbitration forum clauses contained in this Agreement.

PSPC Dkt., R. 1-6; 1-7; 1-8; 1-9; and Scott's Dkt., R. 1-7.

The parties agree that the 1995 Brunswick Agreement contains no reference to arbitration. It states:

**Venue/Dispute Resolution/Governing Law.** Any and all actions and other legal proceedings arising under this agreement shall be filed and maintained only in a state or federal court of competent jurisdiction located in Marion County, Indiana, and the parties hereby consent to the jurisdiction and venue of such courts solely for the purpose of resolution of any such disputes. This Agreement shall be governed by the laws of the State of Indiana.

PSPC Dkt., R. 1-5. Steak n Shake sought to stay litigation on the Brunswick Agreement pending the outcome of arbitration on the other PSPC contracts but did not seek to compel arbitration for this contract. Steak n Shake sought both a stay of pending litigation and an order compelling arbitration on all of the other Franchisees' disputes.

**B.**

In order to compel arbitration, "a party need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich American Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). When deciding whether the parties agreed to arbitrate a certain matter, courts generally should apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *MPACT Constr. Group, LLC v. Superior Concrete Constructors, Inc.*, 802 N.E.2d 901, 904 (Ind. 2004). *See also Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (arbitration is a matter of contract; arbitration contracts are on equal footing with other contracts and must be enforced according to their terms but also may be invalidated by generally applicable contract defense such as fraud, duress or unconscionability). We therefore must first determine whether there are valid agreements to arbitrate in the franchise contracts.

The parties agree that Indiana law applies to all of the franchise contracts. But Steak n Shake also asserts that the court must give due regard to the FAA policy in favor of arbitration in applying those state law principles, resolving

ambiguity in favor of finding enforceable agreements to arbitrate. Steak n Shake is incorrect. Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which that party has not agreed to submit. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 648 (1986). Both federal and state courts acknowledge that the FAA's policy in favor of arbitration applies when determining the *scope* of an agreement to arbitrate, but not when deciding whether there is an agreement to arbitrate in the first instance. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (when a court interprets ambiguous provisions in an agreement covered by the FAA, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration); *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989) (the FAA "simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms."); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) (the FAA was designed to "make arbitration agreements as enforceable as other contracts, but not more so."); *MPACT*, 802 N.E.2d at 906–07 (a court must determine under applicable state law whether the parties generally agreed to arbitrate disputes, without being influenced by the federal policy in favor of arbitration). We therefore must turn to Indiana law to determine the threshold question of whether the parties generally agreed to arbitrate without giving any special consideration to the federal policy favoring arbitration.

Under Indiana law, "[w]hether the parties agreed to arbitrate any disputes is a matter of contract interpretation, and

most importantly, a matter of the parties' intent." *MPACT*, 802
N.E.2d at 906; *Wolvos v. Meyer*, 668 N.E.2d 671, 675 n.1 (Ind.
1996) (when interpreting written contracts, courts seek to
ascertain the intent of the parties at the time the contract was
made as disclosed by the contract language); *Brockmann v.
Brockmann*, 938 N.E.2d 831, 835 (Ind. App. 2010) (the court's
ultimate goal is to determine the parties' intent in drafting the
contract, and to effectuate that intent). Unless the terms of a
contract are ambiguous, they will be given their plain and
ordinary meaning. *Brockmann*, 938 N.E.2d at 834. With these
standards in mind, we assess the language of franchise
contracts.

As Steak n Shake candidly conceded at oral argument, none
of the franchise agreements contain the terms of its later-
adopted arbitration policy. Oral Argument at 4:22. Rather, each
contract contains an "option" of sorts, "reserv[ing] the right to
institute at any time a system of nonbinding arbitration[.]"
Oral Argument at 3:45 ("I think what it gives us is an option to
institute a system of arbitration."). Each venue and dispute
resolution clause also contained a provision for litigation in
courts of competent jurisdiction, and in fact the Franchisees
were limited to resolving disputes in those courts. Steak n
Shake decided to exercise its "option" to institute a system of
nonbinding arbitration after the Franchisees had filed their
lawsuits in federal court.[3] But Steak n Shake was also free

---

[3] At that time, Steak n Shake adopted an arbitration policy that provided,
in relevant part:

(continued...)

under the terms of the franchise agreements to ignore the arbitration provision and never adopt an arbitration policy.

"An illusory promise is a promise which by its terms makes performance entirely optional with the promisor." *Pardieck v. Pardieck*, 676 N.E.2d 359, 364 n.3 (Ind. App. 1997). *See also* Restatement (Second) of Contracts § 2 cmt. e (1981) ("Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise. Although such words are often referred to as forming an illusory promise, they do not fall within the present definition of promise. … Even if a present intention is

---

[3] (...continued)

> If a lawsuit is filed in which claims are based on or arise out of a franchise agreement between the Company and a franchisee, and the franchise agreement at issue permits the Company to require the franchisee to participate in nonbinding arbitration or mediation, the parties shall, at the request of the Company, submit to nonbinding arbitration or mediation as described in the applicable franchise agreement. … If the underlying franchise agreement permits the Company to require participation in arbitration, the proceedings will be conducted by a single arbitrator according to the then-current Commercial Arbitration Rules of the American Arbitration Association. … All matters relating to an arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) except that the decision of the arbitrator will be nonbinding.

Druco Dkt., R. 23-1.

manifested, the reservation of an option to change that intention means that there can be no promisee who is justified in an expectation of performance."). Under that standard, the district court correctly found that the franchise agreements' arbitration clauses were illusory because performance was "entirely optional" with Steak n Shake. *See also Penn v. Ryan's Family Steak Houses, Inc.*, 269 F.3d 753, 759–60 (7th Cir. 2001). In *Penn*, which was decided under Indiana law, an arbitration company committed itself only to providing a forum, rules and procedures, and a hearing and decision based on any dispute. But the firm did not provide any details about the nature of the forum or standards with which its arbitrator must comply. Instead, it retained the sole, unilateral discretion to modify or amend its rules. We found in that instance that the arbitration contract is "hopelessly vague and uncertain as to the obligation … undertaken." Because performance was entirely optional with the promisor, we concluded that the contract was illusory. *See also Morrison v. Amway Corp.*, 517 F.3d 248, 254–55 (5th Cir. 2008) (finding an arbitration clause illusory and unenforceable when the party seeking to enforce it retained the right to unilaterally amend the policy simply by publishing notice of amendment, where nothing in the agreement prevented that party from eliminating arbitration entirely or restricting it to certain claims and disputes); *Dumais v. American Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) (joining "other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory"); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000) (concluding that unfettered discretion in choosing the nature of an arbitral

forum combined with reservation of the right to alter the applicable rules and procedures without any obligation to notify or seek consent from the other party renders a promise to provide an arbitral forum illusory). As we noted above, Steak n Shake was free to exercise or not exercise the arbitration clause at its whim. The company also retained the discretion to determine the circumstances and procedures under which arbitration may take place, including deciding which types of claims will be subject to arbitration. Indeed, nothing in any franchise contract precludes Steak n Shake from instituting a new system of nonbinding arbitration at any time, changing the rules and procedures as the company sees fit.[4] Under Indiana law, such a clause is illusory because performance is entirely optional with the promisor. *Pardieck*, 676 N.E.2d at 364 n.3.

Moreover, in order to be enforceable, an agreement must be sufficiently certain and definite in all of the essential terms so that a court may ascertain when and whether it has been performed. *County Dept. of Public Welfare of Lake County v. American Federation of State, County and Municipal Employees, AFL-CIO, Indiana Council 62*, 416 N.E.2d 153, 156 (Ind. App. 1981). For this reason, an "agreement to agree" is not enforceable under Indiana law. *Wolvos*, 668 N.E.2d at 674; *Mays v.*

---

[4] At oral argument, Steak n Shake denied that it could institute a new system of arbitration at any time, contending that it was bound by the terms of Commercial Arbitration Rules of the American Arbitration Association. But the company adopted those rules not in the franchise contracts themselves but in its later-enacted arbitration *policy.* Nothing in the franchise agreements precludes Steak n Shake from adopting a new arbitration system or policy at any time.

*Trump Indiana, Inc.*, 255 F.3d 351, 357–58 (7th Cir. 2001) (a mere agreement to agree is not a binding contract under Indiana law). But an option contract may be enforceable in certain circumstances, and parties "may make an enforceable contract which obligates them to execute a subsequent final written agreement." *Id*. The difference between an unenforceable "agreement to agree" and a valid option contract depends upon intent to be bound and definiteness of terms. *Wolvos*, 668 N.E.2d at 675. When parties are agreeing to strike a final deal at a later time, "it is necessary that agreement shall have been expressed on all essential terms that are to be incorporated" in the final arrangement, and the final document should serve as a "mere memorial of the agreement already reached." *Wolvos*, 668 N.E.2d at 674–75 (citing 1 Arthur Linton Corbin and Joseph M. Perillo, Corbin on Contracts § 2.8 at 133–34 (rev. ed. 1993)). *See also Mays*, 255 F.3d at 358 ("the existence or nonexistence of a contract turns on whether material terms are missing"). In *Wolvos*, the Indiana Supreme Court recognized that enforcing an incomplete or ambiguous writing created a substantial danger that a court would enforce something neither party intended. Uncertainty in important contract terms might indicate that the parties did not intend to be bound, although parties might expect that more minor items would be left to the discretion of one party or to customary practice. 668 N.E.2d at 675. The court in *Wolvos* evaluated an option contract by assessing whether it was vague and uncertain in important terms, and whether it contained essential terms in language precise enough that neither party could reasonably misunderstand them. *Wolvos*, 668 N.E.2d at 675 (citing *Burk v. Mead*, 64 N.E. 880 (Ind. 1902)).

Applying that reasoning to the Steak n Shake arbitration clauses, we conclude that the clauses are simply too vague and indefinite to be enforceable. The franchise contracts left to Steak n Shake's sole discretion the very important issues of whether and how any claims would be arbitrated, as well as which disputes would be subject to arbitration. The company interpreted its discretion so broadly that it sought to apply its newly-created arbitration policy retroactively to litigation that was pending before Steak n Shake implemented the policy. Moreover, there is no indication that the arbitration policy ultimately adopted by Steak n Shake simply memorialized the terms of an agreement that had already been reached. To the contrary, none of the franchise agreements express with any specificity whether and how an arbitration policy would be implemented. An agreement allowing a company to reserve the right to institute (or not institute, at its sole discretion) "at any time a system of nonbinding arbitration," without setting forth any of the key terms and conditions for the arbitration system is simply too vague and indefinite to be enforceable under Indiana law. *Wolvos*, 668 N.E.2d at 674–75; *Penn*, 269 F.3d at 759 (a contract is unenforceable if it is so indefinite and vague that the material provisions cannot be ascertained). Because performance of the agreement to arbitrate was "entirely optional with the promisor," and because the terms of the arbitration clauses in the franchise contracts were so vague and indefinite that the material terms could not be ascertained, Steak n Shake has failed to demonstrate the existence of valid agreements to arbitrate with any of the Franchisees. As the district court also correctly held, there is no

basis to stay the litigation on the Brunswick Agreement, which contains no arbitration provision.

### III.

The district court correctly denied Steak n Shake's motions to stay the pending litigation and to compel arbitration. Because we conclude that the district court was correct in finding that the arbitration clauses are illusory and unenforceable under Indiana law, we need not address whether the disputes were within the scope of the arbitration agreements or whether nonbinding arbitration fits within the definition of arbitration under the FAA.

AFFIRMED.