In the

# United States Court of Appeals

## For the Seventh Circuit

No. 21-1107

FREDY SOSA,

*Plaintiff-Appellee,*

*v.*

ONFIDO, INC.,

*Defendant-Appellant.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-04247 — **Marvin E. Aspen**, *Judge*.

ARGUED MAY 27, 2021 — DECIDED AUGUST 11, 2021

Before KANNE, SCUDDER, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. Plaintiff Fredy Sosa, a user of the marketplace application OfferUp, registered his identity to become a verified user on the app. The verification process involved using the app's TruYou feature with technology provided by defendant Onfido, Inc. Sosa has since sued Onfido under the Illinois Biometric Information Privacy Act alleging that the TruYou feature used facial recognition technology to collect his biometric identifiers without his consent.

The merits of Sosa's BIPA claim are not at issue at this early stage. This appeal instead concerns whether Sosa may continue litigating his action against Onfido in federal court. Onfido argues that this case belongs in arbitration because it is entitled to enforce an arbitration clause in the Terms of Service contract between Sosa and OfferUp. Though Onfido is not a party to the Terms of Service, it argues that it is entitled to enforce the arbitration clause under three separate nonparty contract enforcement theories: third-party beneficiary, agency, and equitable estoppel. Adding another layer to this dispute, this appeal presents a choice-of-law question. Because the Terms of Service has a Washington choice-of-law provision, Onfido argues that Washington law, rather than Illinois law, must be applied to determine its enforcement rights under the contract.

The district court rejected each of Onfido's nonparty contract enforcement theories and denied Onfido's motion to compel individual arbitration. On the choice-of-law issue, it held that Onfido failed to establish that there was an outcome-determinative difference between Illinois and Washington law, and since Onfido articulated no difference between the two, it applied Illinois law—the law of the forum state—to determine Onfido's right to enforce the arbitration clause. In so doing, the district court held that Onfido failed to establish that it was a third-party beneficiary of the Terms of Service or that it could otherwise enforce the contract's arbitration provision either as an agent of OfferUp or on equitable estoppel grounds.

We agree with the district court in all respects. In the district court proceedings, Onfido never suggested any difference between Illinois and Washington law, and the district

court thus properly applied Illinois law. Further, nothing in the Terms of Service designate Onfido as a third-party beneficiary of that contract, and the record is devoid of evidence establishing that Onfido is an agent of OfferUp, or that Sosa should be equitably estopped from contesting Onfido's right to enforce the arbitration provision. Because Onfido failed to establish any right to enforce the arbitration provision as a nonparty to the Terms of Service, we affirm the district court's denial of Onfido's motion to compel individual arbitration.

I

Onfido provides biometric identification software that is incorporated into its customers' products and mobile apps with the purpose of verifying users' identities. Onfido partnered with OfferUp—an online marketplace where consumers buy and sell goods—to verify users' identities through its software. Fredy Sosa verified his identity with OfferUp using the technology provided by Onfido—the app's TruYou feature. To complete the verification process, Sosa uploaded a photograph of his driver's license and a photograph of his face. Sosa alleges that Onfido then used biometric identification technology without his consent to extract his biometric identifiers and compare the two photographs. Sosa brought class action claims against Onfido under the Illinois Biometric Information Privacy Act stemming from these allegations.

Sosa first filed his BIPA class action against Onfido in Illinois state court, but Onfido removed the case to federal court on diversity jurisdiction grounds and under the Class Action Fairness Act. Once in federal court, Onfido moved to stay the case and to compel individual arbitration based on an arbitration provision in OfferUp's Terms of Service that Onfido argues it is entitled to enforce.

Sosa agreed to OfferUp's Terms of Service when he registered with the app and each time he logged in. The Terms of Service designate that the contract is between Sosa and OfferUp. In bold, the first paragraph of the agreement states that it includes "a mandatory arbitration provision and class action waiver provision, which affect your [Sosa's] rights about how to resolve any dispute with OfferUp, Inc." R. 23 at 13 (caps omitted). The mandatory arbitration provision states that the provision extends to "any and all disputes" between Sosa and OfferUp related to the Terms of Service, *id.* at 35 (caps omitted), and that both Sosa and OfferUp agreed to have any disputes between them resolved through arbitration instead of court:

> [Y]ou and OfferUp agree (1) to waive your and OfferUp's respective rights to have any and all Disputes arising from or related to these Terms, the OfferUp Service or the Materials, resolved in a court, and (2) to waive your and OfferUp's respective rights to a jury trial. Instead, you and OfferUp agree to arbitrate Disputes through binding arbitration (which is the referral of a Dispute to one or more persons charged with reviewing the Dispute and making a final and binding determination to resolve it instead of having the Dispute decided by a judge or jury in court).

*Id.* at 35–36.[1]

---

[1] The Terms of Service exempt a subset of disputes from arbitration, none of which are applicable here. R. 23 at Ex. A § 20(A).

Onfido is not named in the Terms of Service, but the agreement does identify Onfido's software—the TruYou feature—in section 4. That section provides in relevant part:

> If you [Sosa] choose to use the TruYou feature, you represent and warrant to us [OfferUp] that (a) any personal identification document that you provide to us is an unaltered and accurate image of your government-issued personal identification document that is without error, and (b) that you have all necessary permissions to provide such personal identification documents to us and your provision of such personal identification documents to us will not violate any law or regulation or cause us to be subject to any investigation, prosecution or legal action. DO NOT USE THIS FEATURE IF THE FOREGOING IS NOT TRUE.

*Id.* at 18.

Beyond section 4's limitations on Sosa's use of the TruYou feature, the contract also generally prohibits users from using the OfferUp service to "post, upload to, transmit, distribute … disclose, or otherwise, publish" any content that "may expose OfferUp, Users or others to harm or liability." *Id.* at 25. Meanwhile, the agreement authorizes OfferUp to "disclose [users'] photo identification document[s] or certain personal information [they] provide to [OfferUp's] third-party service providers." *Id.* at 18–19. The agreement additionally limits any liability of "OfferUp" and "OfferUp providers" arising out of or connected with the OfferUp service's use. *Id.* at 33 (caps omitted). OfferUp providers are defined to include "affiliates [and] licensors." *Id.* at 31 (caps omitted).

OfferUp's control over third-party content is expressly disclaimed by the Terms of Service:

> In using the OfferUp Service, you may view content, utilize services, or otherwise interact with content and services provided by third parties, including, but not limited to, the OfferUp Payment Solution provided by a third-party payment processor, links and/or connections to websites, applications or services of such parties ("Third-Party Content"). OfferUp does not control, endorse or adopt any Third-Party Content ….

*Id.* at 26–27. In addition, the agreement provides that its "Terms do not create any private right of action on the part of any third party." *Id.* at 25. A Washington choice-of-law provision is also included.

In its motion to compel individual arbitration, Onfido argued that it was entitled to enforce the Terms of Service as a nonparty under three separate theories: (1) as a third-party beneficiary of the Terms of Service, (2) through its alleged agency relationship with OfferUp, and (3) on equitable estoppel grounds. Although it identified the Terms of Service's choice-of-law provision and cited to both Washington and Illinois law in its district court briefing, Onfido argued only that it prevailed under both states' laws without articulating any difference in their application.

The district court denied Onfido's motion to stay and compel individual arbitration and applied Illinois law to decide Onfido's enforcement rights under the Terms of Service. In choosing Illinois law over Washington law, the district court

explained that "the parties agree that there are no outcome-determinative differences between Illinois law and Washington law." The district court then rejected each of Onfido's three nonparty enforcement theories. First, the district court held that Onfido failed to establish that it was a third-party beneficiary of the Terms of Service because the agreement did not specifically name Onfido as an intended beneficiary of the contract nor indirectly identified it as such by describing a class to which it belongs. Onfido also did not show that it was an "affiliate" of OfferUp to qualify as an OfferUp provider under the Terms of Service. The district court additionally held that Onfido could not enforce the Terms of Service as an agent of OfferUp because no evidence supported that OfferUp controlled Onfido's activities or that it authorized Onfido to conduct legal transactions in OfferUp's name. In rejecting Onfido's equitable estoppel theory, the district court found that Onfido failed to show that it detrimentally relied on the Terms of Service's arbitration clause such that Sosa should be barred from contesting Onfido's invocation of that provision.

Onfido now brings an interlocutory appeal of the district court's denial of its motion to compel arbitration pursuant to 9 U.S.C. § 16(a)(1)(A) & (B). We begin our review with the district court's determination on the choice-of-law issue and then turn to its conclusions on Onfido's three nonparty enforcement theories.

## II

A nonparty's right to enforce an arbitration agreement is governed by state law. See *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). This fundamental principle is not contested here. Instead, the parties dispute whether Illinois state

law or Washington state law governs Onfido's right to en-
force the Terms of Service's arbitration provision. Onfido ar-
gues that Washington law must apply because the Terms of
Service include a Washington choice-of-law provision. Sosa,
on the other hand, contends that applying the Washington
choice-of-law provision runs afoul of Illinois' choice-of-law
rules because Onfido did not establish an outcome-determi-
native difference between Illinois and Washington law in the
district court.

As noted, the district court sided with Sosa and applied
Illinois law. We review the district court's choice-of-law deci-
sion de novo. See *Auto-Owners Ins. Co. v. Websolv Computing,
Inc.*, 580 F.3d 543, 546 (7th Cir. 2009). When a federal court sits
in diversity, "we look to the choice-of-law rules of the forum
state to determine which state's law applies" to the issues be-
fore it. *Heiman v. Bimbo Foods Bakeries Distrib. Co.*, 902 F.3d 715,
718 (7th Cir. 2018). Under Illinois choice-of-law rules, forum
law is applied "unless an actual conflict with another state's
law is shown, or the parties agree that forum law does not
apply." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020)
(citation omitted); see *Bridgeview Health Care Ctr., Ltd. v. State
Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014) ("A choice-
of-law determination is required only when a difference in
law will make a difference in the outcome." (quotation omit-
ted)). "The party seeking the choice-of-law determination
bears the burden of demonstrating a conflict." *Bridgeview
Health Care Ctr., Ltd.*, 10 N.E.3d at 905.

Onfido contends that it established a conflict between Illi-
nois and Washington law before the district court, while ad-
ditionally arguing that it had no obligation to do so because
Illinois courts give effect to contractual choice-of-law clauses

without regard to the state's traditional conflicts rules. Onfido's first argument is a non-starter. Onfido made no attempt to articulate any difference between Illinois and Washington law before the district court—much less an outcome determinative one. In its district court briefing, Onfido argued only that it prevailed under both Illinois and Washington law on its third-party beneficiary, agency, and equitable estoppel theories of nonparty contract enforcement. But arguing that Illinois and Washington law produce an identical result on Onfido's claims plainly does not demonstrate an "outcome-determinative" difference between them. Onfido merely cited the theories' elements under both Illinois and Washington law, noted that the states' standards applied "similarly," and claimed that it prevailed under both states' laws. See R. 21 at 9–13. This was not sufficient to carry Onfido's burden of demonstrating a conflict. See *RS Invs. Ltd. v. RSM US, LLP*, 125 N.E.3d 1206, 1216 (Ill. App. Ct. 2019) (choice-of-law determination on the issue of standing rendered "pointless" where defendant argued that plaintiffs lacked standing to bring suit under both Illinois and Cayman Islands law).

Onfido's second argument—that notwithstanding its failure to demonstrate an outcome-determinative difference between Illinois and Washington law, Onfido should not have been put to that test to begin with—is equally unfounded. Specifically, Onfido contends that Illinois' traditional conflicts-of-law rules do not apply because Illinois courts "respect[] a contract's choice-of-law clause as long as the contract is valid and the law chosen is not contrary to Illinois' fundamental public policy." Appellant's Br. at 13 (quoting *Sneeze Wheeze & Itch Assocs., LLC v. Dynavax Techs. Corp.*, No. 09–cv–1190, 2010 WL 1050249, at *6 n.9 (C.D. Ill. Mar. 16, 2010)). That may be true, but Onfido is not a party to the contract here.

And under Illinois law, nonparties to a contract are not entitled to enforce a choice-of-law provision thereunder. See *Maldonado v. Creative Woodworking Concepts, Inc.*, 796 N.E.2d 662, 665 (Ill. App. Ct. 2003); *Maremont Corp. v. Cheshire*, 681 N.E.2d 548, 551–52 (Ill. App. Ct. 1997); *Jakubik v. Jakubik*, 566 N.E.2d 808, 810 (Ill. App. Ct. 1991). Onfido offers no authority to support its position that Illinois' longstanding choice-of-law principles are disregarded when a nonparty seeks to establish its enforcement rights under a contract.[2]

To the contrary, Illinois courts have recognized time and time again that "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd.*, 10 N.E.3d at 905 (quotation omitted); see *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007) (same); *Pekin Ins. Co. v. XData Sols., Inc.*, 958 N.E.2d 397, 403 (Ill. App. Ct. 2011) ("Choice of law considerations are not implicated unless there is an actual conflict in the law of the two states."). While Onfido couches its argument in contract enforcement, it plainly seeks a choice-of-law determination in this case. It contends that Washington law should apply to determine its right to enforce the arbitration agreement as a nonparty, rather than Illinois law. But as we have explained, Onfido's failure to demonstrate any conflict between Illinois and Washington law before the district court rendered a choice-of-law determination inappropriate. See *SBC Holdings, Inc. v. Travelers Cas. & Sur. Co.*, 872 N.E.2d 10, 21 (Ill. App. Ct. 2007) ("In the absence of a conflict, Illinois

---

[2] For example, Onfido's reliance on *Sneeze Wheeze* is inapplicable here because in that case, unlike here, both parties agreed that a contractual choice-of-law provision designating California law applied to the parties' dispute.

law applies as the law of the forum."). Accordingly, the district court properly applied Illinois law.

## III

With choice of law settled we now turn to the merits of the district court's denial of Onfido's motion to compel arbitration. "We review de novo a district court's grant or denial of a motion to compel arbitration." *Druco Rests., Inc. v. Steak N Shake Enters., Inc.*, 765 F.3d 776, 779 (7th Cir. 2014) (emphasis removed). We review findings of fact underlying that decision for clear error. *Id.* On Onfido's equitable estoppel claim, however, "we review [the] district court's decision to apply an equitable doctrine for an abuse of discretion," as we do in other contexts, because "nothing about arbitration would seem to call for a different approach." *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1059 (7th Cir. 2018) (quotation omitted).

A nonsignatory to a contract typically has no right to invoke an arbitration provision contained in that contract. See, *e.g.*, *Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 755 (Ill. App. Ct. 2000). But there are recognized exceptions to that general rule, including the three nonparty contract enforcement theories—third-party beneficiary, agency, and equitable estoppel—that Onfido raises here. See *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539–41 (Ill. App. Ct. 2004) (applying third-party beneficiary, agency, and equitable estoppel theories in considering a nonparty's claim to enforce an arbitration agreement). We address below whether Onfido has a right to enforce the arbitration provision in the Terms of Service under any of these doctrines.

A

Onfido first argues that it can enforce the arbitration clause as a third-party beneficiary of the Terms of Service. Illinois courts, however, recognize a "strong presumption against conferring contractual benefits on noncontracting third parties." *Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, 117 N.E.3d 1155, 1159 (Ill. App. Ct. 2018). To overcome that presumption, "the implication that the contract applies to third parties must be so strong as to be practically an express declaration." *155 Harbor Drive Condo. Ass'n v. Harbor Point Inc.*, 568 N.E.2d 365, 375 (Ill. App. Ct. 1991) (quotation omitted). It is not enough to show that the "parties know, expect, or even intend that others will benefit from the agreement." *Marque Medicos Farnsworth, LLC*, 117 N.E.3d at 1159. Instead, for a nonparty to qualify as a third-party beneficiary, the language of the contract must show that "the contract was made for the direct, not merely incidental, benefit of the third person." *Martis v. Grinnell Mut. Reinsurance Co.*, 905 N.E.2d 920, 924 (Ill. App. Ct. 2009). This intention "must be shown by an express provision in the contract identifying the third-party beneficiary by name or by description of a class to which the third party belongs." *Id.*

Onfido is not named in the Terms of Service but it argues the contract's reference to its technology—the TruYou feature—in section 4 establishes its right as a third-party beneficiary. We disagree. That section simply prohibits OfferUp users from using the TruYou feature without first obtaining necessary permissions to upload their personal documents or if their use of the feature would violate "any law or regulation…." These limits on users' operation of the TruYou feature directly benefit OfferUp, which has an interest in

prohibiting illegal conduct on its platform and minimizing its exposure to liability related to such conduct. Nothing in the Terms of Service indicate that this section or the contract as a whole were intended for the direct benefit of Onfido. We thus presume that the agreement intended to benefit OfferUp and Sosa—the contracting parties. See *155 Harbor Drive Condo. Ass'n*, 568 N.E.2d at 375. And, even if we accept that Onfido ultimately incidentally incurred a benefit from the contract's TruYou provision, that is not sufficient to demonstrate that Onfido qualifies as a third-party beneficiary under Illinois law. *Martis* 905 N.E.2d at 924. ("That the contracting parties know, expect, or even intend that others will benefit from their agreement is not enough to overcome the presumption that the contract was intended for the direct benefit of the parties.").[3]

Onfido additionally points to the contract's limitation of liability provision, which protects OfferUp and "OfferUp providers," to support its third-party beneficiary status. R. 23 at 33 (caps omitted). But the contract defines "OfferUp providers" as OfferUp's "affiliates [and] licensors." *Id.* at 31 (caps omitted). Onfido is neither. First, Onfido does not argue that it is a "licensor" of OfferUp. Second, an "affiliate" is generally

---

[3] For the first time on appeal, Onfido contends that it should be granted third-party beneficiary status, even as an incidental beneficiary of the contract, because of its close relationship with OfferUp. Onfido did not raise this argument before the district court, so we do not consider it. See *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (recognizing that in a civil case "we typically will not entertain an argument raised for the first time on appeal, even for the limited purpose of ascertaining whether a plain error occurred." (quotation omitted)).

understood to be: "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *Affiliate*, BLACK'S LAW DICTIONARY (11th ed. 2019). Onfido offers no evidence of a formal corporate relationship with OfferUp, and it provides no reason to suggest that the parties intended that the term "affiliate," as referenced in the Terms of Service means anything other than its ordinary definition. See *Hunt v. Farmers Ins. Exch.*, 831 N.E.2d 1100, 1102 (Ill. App. Ct. 2005) ("It has long been held by Illinois courts that words used in a contract must be given their plain and ordinary meaning.") (quotation omitted)). Since Onfido is not an "OfferUp provider," the contract's limitation of liability provision plainly does not apply to it.

Moreover, we note that the Terms of Service explicitly disclaim control over third-party content, stating that the contract creates no "private right of action on the part of any third party." R. 23 at 25. More narrowly, the arbitration provision itself identifies that the agreement to arbitrate is between Sosa and OfferUp without reference to a nonparty. Read as a whole, the Terms of Service neither provide any benefit to Onfido nor give Onfido a right to enforce the arbitration provision. The district court thus properly denied Onfido's motion to compel arbitration on Onfido's third-party beneficiary theory.

### B

Next, Onfido contends it can enforce the Terms of Service as an agent of OfferUp. Under Illinois law, "[a]gency is a consensual, fiduciary relationship between two legal entities created by law." *Ervin*, 812 N.E.2d 534 at 539. We have recognized that "[t]he test of agency is whether the alleged

principal has the right to control the manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Chemtool, Inc. v. Lubrication Techs., Inc.*, 148 F.3d 742, 745 (7th Cir. 1998) (interpreting Illinois law) (quotation omitted). "While an agency relationship can be created by contract or conduct, not all contracts create agency relationships and not all conduct creates agency relationships." *Id.*; see also *id.* at 745–46 (affirming the district court's finding of no agency relationship between a manufacturer and supplier where the manufacturer did not exercise the requisite control over the supplier's activities, nor show that the supplier had authority to alter the manufacturer's legal relations).

Onfido—the purported agent of OfferUp—offers little to show that it has an agency relationship with OfferUp. Indeed, it offers no evidence to support that OfferUp exercised control over its activities, or that Onfido could affect legal relationships on OfferUp's behalf. Instead, Onfido relies primarily on the allegations in Sosa's complaint which alleged that OfferUp "strongly encouraged [users] to register their identities" through the app's TruYou feature and that OfferUp "partnered up with Onfido" for this purpose. R. 1-1 at 8–9. Onfido contends that courts often consider a complaint's allegations in deciding a motion to compel arbitration, but that's of no consequence here because the allegations in Sosa's complaint fail to support a principal-agent relationship between OfferUp and Onfido. That OfferUp encouraged users to register their identities with the app's TruYou feature and that Onfido and OfferUp partnered to provide this technology

through the app establishes nothing more than a business relationship between the parties—not agency.[4]

In light of Illinois' recognition that elements of control and authority are essential to establish agency, and the lack of any evidence offered by Onfido to support these elements, the district court properly determined that Onfido failed to establish an agency relationship with OfferUp.

C

Finally, Onfido argues that it is entitled to enforce the arbitration agreement on equitable estoppel grounds. "A claim of equitable estoppel exists where a person, by his or her statements or conduct, induces a second person to rely, to his or her detriment, on the statements or conduct of the first person." *Ervin*, 812 N.E.2d at 541 (quotation omitted). The party bringing an equitable estoppel claim "must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the facts, and such reliance must have been reasonable." *Id.* "The party claiming [equitable] estoppel has the burden of proving it by clear and convincing evidence." *In re Scarlett Z.-D.*, 28 N.E.3d 776, 785 (Ill. 2015).

Applying this standard, Onfido failed to show that Sosa should be equitably estopped from denying Onfido's enforcement of the arbitration provision. Onfido identified no representation that Sosa made to Onfido under the Terms of Service, or otherwise, to induce Onfido to rely on the contract's

---

[4] Onfido also argues for the first time on appeal that Onfido is OfferUp's agent on apparent authority principles. Since Onfido did not raise this argument before the district court, we do not consider it. See *Henry*, 969 F.3d at 786.

arbitration provision. Rather, as discussed, the representations in the Terms of Service concerning Sosa's use of the TruYou feature were directed at OfferUp—not Onfido. Further, Onfido failed to present any evidence of its detrimental reliance on any such representation as required by Illinois law. And, in any event, its failure to argue detrimental reliance until its reply brief before the district court rendered that argument waived. We do not disturb that conclusion here.

Onfido responds that it should not be required to establish detrimental reliance, urging the court to apply a federal common law standard articulated by *Paragon Micro, Inc. v. Bundy*, 22 F. Supp. 3d 880, 890 (N.D. Ill. 2014). There, the Northern District of Illinois, applying federal common law, noted that equitable estoppel may apply to enforce an arbitration provision where (1) the "signatory references to or presumes the existence of a written agreement in asserting its claims against a non-signatory", or (2) the signatory "raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and one or more signatories to the contract." *Id. (*quotation omitted*).*

This federal standard has never been applied by any Illinois court, but Onfido nevertheless urges this court to predict that the Illinois Supreme Court will adopt this standard in the arbitration context. But even after *Paragon Micro*, the Illinois Supreme Court has reaffirmed its longstanding detrimental reliance standard in equitable estoppel claims. See *In re Scarlett Z.-D.*, 28 N.E.3d at 785. We hardly need to predict where it stands. Onfido offers no compelling reason to support its position that the Illinois Supreme Court would adopt a different standard in the arbitration context. Thus, like with Onfido's other enforcement theories, the district court

reasonably denied Onfido's motion to compel arbitration on equitable estoppel grounds.

AFFIRMED