In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2947

EAST COAST ENTERTAINMENT OF DURHAM, LLC,

*Plaintiff-Appellant,*

*v.*

HOUSTON CASUALTY COMPANY and AMERICAN CLAIMS
MANAGEMENT, INC.,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-06551 — **Joan B. Gottschall**, *Judge.*

———————————

ARGUED MARCH 29, 2022 — DECIDED APRIL 12, 2022

———————————

Before FLAUM, ST. EVE, and JACKSON-AKIWUMI, *Circuit
Judges.*

ST. EVE, *Circuit Judge.* East Coast Entertainment of
Durham, LLC ("ECE") owns and operates movie theaters in
North Carolina. Like many businesses, ECE lost money after
the Governor of North Carolina imposed statewide closures
in response to COVID-19. ECE submitted a claim for coverage
under its insurance policy with Houston Casualty Company

("HCC"). HCC and American Claims Management ("ACM"), its claims administrator, denied the claim, and ECE brought this suit for declaratory relief and damages in Illinois state court. Defendants removed the case to federal court under diversity jurisdiction,[1] and the district court granted their motion to dismiss, concluding that ECE failed to allege a physical alteration of its property. Because our recent decision in *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327 (7th Cir. 2021), squarely governs this suit, we affirm.

## I. Background

ECE's insurance policy with HCC includes the following "Business Income" coverage provision:

> We will pay the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" *must be caused by direct physical loss of or damage to property* at premises that are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damages must be caused by or result from a Covered Cause of Loss.

(Emphasis added). The "period of restoration" is the period between "the date of direct physical loss or damage to the property" and either "[t]he date when the property should be

---

[1] The amount in controversy is not in dispute, and the parties are diverse: ECE is a citizen of South Carolina because the sole member of the LLC is domiciled in South Carolina. HHC is a Texas citizen, and ACM is a California citizen.

repaired, rebuilt or replaced with reasonable speed and similar quality" or "when business is resumed at a new permanent location," whichever occurs first.

A "Civil Authority" provision similarly covers "the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to *direct physical loss of or damage to property*, other than at the described premises, caused by or resulting from any Covered Cause of Loss." (Emphasis added).

ECE sued for a declaratory judgment in favor of coverage, as well as damages for bad-faith denial of coverage. ECE contends the provisions above cover economic losses due to COVID-related closures because the virus rendered ECE's property unsafe. The complaint alleges, for example, that the virus can be "transmitted by way of human contact with surfaces and items of physical property located at premises in North Carolina." The complaint also alleges: "It is likely that airborne SARS-CoV-2 particles have been physically present at Plaintiff's premises … during the time the policy was in effect."

Defendants moved to dismiss the complaint for failure to state a claim, arguing that the Policy does not provide coverage because ECE's economic losses stem from the Governor's executive orders, not any physical alteration of or damage to property. The district court agreed and granted their motion to dismiss with prejudice. Because ECE's bad-faith denial of coverage claim depended upon the coverage determination, that claim failed as well. The district court further concluded that ECE failed to show a conflict between Illinois law and

North Carolina law regarding the plain and ordinary meaning of "direct physical loss," so Illinois law applied.

## II. Discussion

We review de novo the grant of a motion to dismiss for failure to state a claim. *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 307 (7th Cir. 2021). A federal court sitting in diversity applies the choice-of-law rules of the forum state, here Illinois. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). In the absence of an actual conflict between Illinois law and the law of another state, the substantive law of Illinois applies. *Id.* ECE, as the party seeking a choice-of-law determination, bears the burden of demonstrating that a conflict exists. *Id*.

Courts applying Illinois law aim to "ascertain the parties' intent" by first consulting "the plain and ordinary meaning of the contract language." *Am. Bankers Ins. Co. of Fla. v. Shockley*, 3 F.4th 322, 327 (7th Cir. 2021) (internal quotation marks omitted). "Undefined terms will be given their plain, ordinary, and popular meaning; *i.e.*, they will be construed with reference to the average, ordinary, normal, reasonable person." *Sproull v. State Farm Fire & Cas. Co.*, ___ N.E.3d ___, 2021 IL 126446, ¶ 19. If an insurance policy is unambiguous, the court must apply its terms as written. *Crescent Plaza Hotel*, 20 F.4th at 308. Mere "disagreement between the parties as to meaning does not itself make the policy ambiguous, and the court 'will not strain to find an ambiguity where none exists.'" *Id*. (quoting *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1004, 237 Ill. 2d 424 (2010)).

### A. *Sandy Point* Squarely Precludes Coverage

Shortly after ECE filed its opening brief on appeal, we issued our opinion in *Sandy Point Dental, P.C. v. Cincinnati Insurance Co.*, 20 F.4th 327 (7th Cir. 2021). In *Sandy Point*, we joined four other circuits in concluding that mere loss of use due to COVID-related closures does not constitute "direct physical loss" when unaccompanied by any physical alteration to property. *Id*. at 330, 333 (applying Illinois law and collecting cases).[2] On the same day, we reached an identical conclusion in two similar cases. *See Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 19 F.4th 1002, 1004–05 (7th Cir. 2021) (applying Illinois law); *Crescent Plaza Hotel*, 20 F.4th at 306 (same). Since then, three other circuits have joined this consensus, and no court of appeals has held otherwise.[3]

The policy provisions at issue in *Sandy Point* are materially indistinguishable from ECE's policy. *See Sandy Point*, 20 F.4th at 330–31. As we explained in *Sandy Point*:

> The phrase is "direct physical loss or damage."
> The words "direct physical" are most sensibly
> read as modifying both "loss" and "damage."

---

[2] *Santo's Italian Café LLC v. Acuity Ins. Co.*, 15 F.4th 398, 401–03 (6th Cir. 2021) (applying Ohio law); *Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021) (applying Iowa law); *Mudpie, Inc. v. Travelers Cas. Ins. Co.*, 15 F.4th 885, 892 (9th Cir. 2021) (applying California law); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (applying Georgia law).

[3] *Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indemn. Ins. Co.*, 21 F.4th 704, 709 (10th Cir. 2021) (applying Oklahoma law); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 220 (2d Cir. 2021) (applying New York law); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 455 (5th Cir. 2022) (applying Texas law).

> But even if they can be divorced from "damage" (and we do not think that they can), they indisputably modify "loss." … Whatever "loss" means, it must be physical in nature.

*Id.* at 332. "Even if the virus was present *and* physically attached itself to Sandy Point's premises, Sandy Point does not allege that the virus *altered* the physical structures to which it attached, and there is no reason to think that it could have done so." *Id*. at 335. Because the businesses in *Sandy Point* "alleged neither a physical alteration to property nor an access- or use-deprivation so substantial as to constitute a physical dispossession," they failed to state a claim for coverage. *Id*. at 337.

Try as it might, ECE similarly fails to allege a physical alteration of its property. The mere presence of the virus on surfaces did not physically alter the property, nor did the existence of airborne particles carrying the virus. ECE does not allege that it needed to "repair[], rebuil[d] or replace[]" any structures or items on the premises, or that its business "resumed at a new permanent location," as contemplated in the Policy's "period of restoration" definition. In short, the district court properly concluded that ECE was not entitled to coverage under the Policy.

Because ECE does not have a valid claim for coverage, its bad-faith denial of coverage claim necessarily fails as well. *See Sandy Point*, 20 F.4th at 337 ("[The insurer] could not have been fraudulent or vexatious in denying coverage where adequate grounds for coverage did not exist in the first place.").

### B.  There is No Conflict of State Law

The growing national consensus regarding the meaning of "direct physical loss" underscores that this case does not turn on variations in state contract law. To the extent that ECE still argues there is a conflict between Illinois law and North Carolina law, it has not satisfied its burden. *See Sosa*, 8 F.4th at 637. Both Illinois and North Carolina courts look to the plain and ordinary meaning of terms in an insurance policy; where, as here, those terms are unambiguous, there is no need to construe them against the insurer. *See, e.g.*, *Register v. White*, 599 S.E.2d 549, 553, 358 N.C. 691 (2004). Tellingly, multiple federal district courts applying North Carolina law in COVID-19 insurance cases have reached the same conclusion as *Sandy Point*.[4] In the absence of any conflict, Illinois law applies.

### III. Conclusion

For the foregoing reasons, the district court's judgment is

AFFIRMED.

---

[4] *See, e.g.*, *Death & Taxes, LLC v. Cincinnati Ins. Co.*, No. 5:21-CV-125-D, 2022 WL 337196, at *1 (E.D.N.C. Feb. 2, 2022) (citing *Sandy Point*, 20 F.4th at 330–34); *Golden Corral Corp. v. Ill. Union Ins. Co.*, ___ F. Supp. 3d ___, 2021 WL 4097684, at *6–8 (E.D.N.C. Sept. 8, 2021); *Summit Hosp. Grp., Ltd. v. Cincinnati Ins. Co.*, No: 5:20-CV-254-BO, 2021 WL 831013, at *3–4 (E.D.N.C. Mar. 4, 2021). Appeals are pending in all three cases, so the Fourth Circuit has not yet weighed in.