In the

# United States Court of Appeals
## For the Seventh Circuit

_____

Nos. 12-3882 & 13-2230

BOB MYRICK and CHARLOTTE PHILLIPS,

*Plaintiffs-Appellants*,

*v.*

WELLPOINT, INC., *et al.*,

*Defendants-Appellees*.

_____

Appeals from the United States District Court
for the Southern District of Illinois.
No. 10-cv-00357-JPG-SCW — **J. Phil Gilbert**, *Judge*.

_____

ARGUED JANUARY 24, 2014 — DECIDED AUGUST 19, 2014

_____

Before BAUER, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. During 2001 the insurance regulators of Illinois permitted WellPoint (through a subsidiary) to acquire RightCHOICE Managed Care, Inc., which offered health insurance through its subsidiary Right-CHOICE Insurance Company. WellPoint caused Right-CHOICE Insurance to withdraw from the Illinois market in 2002; this cancelled all RightCHOICE policies. WellPoint of-

fered the policyholders costlier UniCare policies as substitutes. Persons who elected not to pay the higher premiums had to shop for policies from different insurers, which usually declined to cover pre-existing conditions. Contending that the cancellation of RightCHOICE policies violated Illinois law, Greg Cima and several others filed suit and asked the district court to certify a class of all former RightCHOICE policyholders. The district court declined, *Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374 (S.D. Ill. 2008), and later entered judgment against plaintiffs on the merits, *Cima v. WellPoint Health Networks, Inc.*, 2008 U.S. Dist. LEXIS 84882 (S.D. Ill. Oct. 22, 2008). No one appealed.

Because *Cima* had not been certified as a class action, the judgment bound only the named plaintiffs. The law firm behind *Cima* found another set of former policyholders and filed a new suit, this time in state court, making the same substantive contentions and again proposing certification as a class action. The federal decision not to certify a class did not prevent state courts from reaching a contrary decision, see *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011), but the federal decision on the merits remained. Defendants removed the suit under 28 U.S.C. §1453, part of the Class Action Fairness Act. Section 1453 incorporates the requirements of 28 U.S.C. §1332(d), which makes this suit removable because the proposed class has at least 100 members, the amount in controversy exceeds $5 million, and at least one class member has a citizenship different from at least one defendant.

Plaintiffs asked the district judge to remand the suit under §1332(d)(4), which says that the court shall "decline to exercise" the jurisdiction created under §1332(d)(2) if at least two-thirds of the class's members are citizens of the state in

which the suit began and at least one defendant from which "significant relief" is sought is a citizen of the same state. It is agreed that the complaint seeks "significant relief" from an Illinois defendant. Plaintiffs observed that the Right-CHOICE policy was offered only to persons who represented that they live in Illinois (or, for group policies, to employers who represented that most beneficiaries live in Illinois). The policies were cancelled in 2002, and plaintiffs maintained that, if their former holders left Illinois at the normal rate (the Census Bureau estimates that roughly 2% of the nation's population changes states each year), about 87% of the class would have been Illinois residents when the suit was removed. But the district judge denied the motion to remand. *Phillips v. WellPoint, Inc.*, 2010 U.S. Dist. LEXIS 123844 (S.D. Ill. Nov. 23, 2010). It then again declined to certify a class, *Phillips v. WellPoint, Inc.*, 2012 U.S. Dist. LEXIS 147736 (S.D. Ill. Oct. 15, 2012), and again ruled in defendants' favor on the merits, *Phillips v. WellPoint, Inc.*, 2012 U.S. Dist. LEXIS 175405 (S.D. Ill. Dec. 10, 2012). This time appeals have been taken: by plaintiff Bob Myrick concerning all issues and by plaintiff Charlotte Phillips concerning the district court's award of costs.

When deciding that the suit belongs in federal court, the district judge noted that the policies were issued to persons who represented that they "reside" in Illinois, while §1332(d)(4) deals with the class members' "citizenship". For purposes of the diversity jurisdiction, citizenship differs from residence. Citizenship means domicile (the person's long-term plan for a state of habitation) rather than just current residence. See *In re Sprint Nextel Corp.*, 593 F.3d 669 (7th Cir. 2010) (distinguishing residence from citizenship for the purpose of §1332(d)(4)). What's more, people who *said* they

resided in Illinois might have meant something else; perhaps some who lived in Indiana but worked in Illinois bought RightCHOICE policies. And for the purpose of §1332(d)(4) employers that purchased group plans have their own citizenships, which may be distinct from the residence of the policies' beneficiaries. Group policies also covered persons who lived outside of Illinois, if employers represented that most workers lived inside. The district judge thought that plaintiffs had failed to establish the exception to federal jurisdiction under §1332(d)(2).

It is not clear from the statute which side has the burden of persuasion under §1332(d)(4), but *Hart v. FedEx Ground Package System, Inc.*, 457 F.3d 675 (7th Cir. 2006), holds that it belongs to the party relying on the home-state exception. It follows that the party proposing that the district court "decline to exercise" jurisdiction that was properly invoked at the time of removal also has the burden of production. The jurisdictional rules are those in §1332(d)(2); the "decline to exercise" clause of §1332(d)(4), like the local-law-remand provision in 28 U.S.C. §1367(c), concerns whether the court exercises jurisdiction to the full, not whether jurisdiction exists. See *Morrison v. YTB International, Inc.*, 649 F.3d 533 (7th Cir. 2011). This makes it a party-driven rather than a court-driven rule. Judges must enforce limits on subject-matter jurisdiction no matter what the litigants do or concede, but other case-processing rules may be waived or forfeited, and judges may wait for issues to be properly presented. See, e.g., *Gonzalez v. Thaler*, 132 S. Ct. 641 (2012); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010). So plaintiffs needed to produce some evidence that would allow the court to determine the class members' citizenships on the date the case was removed. Yet they produced none.

Instead plaintiffs pointed to the policies' language and asked the court to infer that (a) because coverage under individual policies was supposed to be restricted to residents of Illinois, it was so restricted in fact; (b) all residents of Illinois also are citizens of Illinois; (c) holders of RightCHOICE policies were no more likely to move than average citizens of every state; and (d) employers purchasing group policies all are citizens of Illinois, even though the policies do not restrict the location of employers (that is, California or Wisconsin firms could purchase RightCHOICE policies for workers at their facilities in Illinois). These propositions may or may not be right, but plaintiffs did not offer any evidence to support them.

In a supplemental memorandum filed after oral argument, plaintiffs contended that proving the citizenship of all class members is simply too expensive, so proof should be excused. Lawyers who launch class actions are not in a good position to complain about the expenses they entail; plaintiffs and their counsel must be prepared to meet them or be deemed inadequate representatives. Cf. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) (the cost of notifying all class members does not justify foregoing notice or shifting the expense to the defendants).

Not that it would have been prohibitively costly to offer evidence. Counsel for the proposed class assumed that there were only two options: determine the citizenship of every policyholder (expensive) or rely on assumptions (cheap). But there's at least one more option: take a random sample of policyholders (100, say), ascertain the citizenship of each of these on the date the case was removed, and extrapolate to the class as a whole. If the sample yields a lopsided result

(say, 90% Illinois citizens or only 50% Illinois citizens) then the outcome is clear without the need for more evidence. (The more lopsided the result, the smaller the sample needed to achieve statistical significance.) If the result is close to the statutory two-thirds line, then do more sampling and hire a statistician to ensure that the larger sample produces a reliable result. Nothing of the kind was done, however, and on an empty record the district court was entitled to conclude that §1332(d)(4) has not been satisfied.

We skip over the question whether the plaintiffs could have met the requirements for class certification under Fed. R. Civ. P. 23, because counsel's insouciance toward the need for proof of the class members' citizenship is only one illustration of plaintiffs' (and counsel's) inadequacy as representatives. The very fact that counsel have asked us to direct the district court to certify this suit as a class action is another. Plaintiffs have already lost on the merits; that counsel want to take the rest of the putative class down in flames with them shows what a slapdash approach they have adopted to this litigation.

We could understand a contention that, if we first reverse on the merits (or at least remand for a trial), *then* we should direct the district judge to certify a class. But class counsel's brief maintains that a class should be certified no matter what happens on the merits. (Counsel receded from this position at oral argument, but only after initially defending it.) When writing the brief, counsel seems to have forgotten that, had a class been certified in *Cima*, this suit could never have been filed. Now that the district court has (again) ruled for WellPoint on the merits, we would have expected defendants to become the proponents of class certification, which

would make a third suit impossible. Defendants appear to be content with the precedential effect of an appellate decision, however, and it is unclear why that wouldn't do nicely for the putative class as well if plaintiffs prevail in this court. No more need be said about Rule 23.

As for the merits: the district court has covered them in detail, more than twice. (Both *Cima* and this suit produced multiple opinions on different substantive issues, each time followed by opinions dealing with requests for reconsideration.) We have nothing to add to what the district judge has written and affirm substantially for the reasons he gave.

In brief: (1) A claim that WellPoint misrepresented its plans to state insurance regulators when acquiring Right-CHOICE may entitle the regulators to seek redress, but they have not expressed any dissatisfaction; private litigants cannot enforce state regulators' entitlements. (2) Because Right-CHOICE was losing money in 2001, it is unlikely that the acquisition (or a statement made to an agency) was the cause of the policy's discontinuation or its replacement by a different policy with a higher premium. (3) The Illinois Health Insurance Portability and Accountability Act (HIPAA) cannot be enforced by a private suit when there are other public or private means to implement its terms. *Abbasi v. Paraskevoulakos*, 187 Ill. 2d 386 (1999); *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455 (1999). Since the RightCHOICE policies contained HIPAA's substantive terms almost verbatim, enforcing the contract suffices. (4) Plaintiffs now concede that as a matter of contract RightCHOICE Insurance was entitled to withdraw from the Illinois market and cancel existing policies. HIPAA's language about withdrawal and cancellation,

215 ILCS 97/50(B)(3), (C), is materially identical to the policies in this respect, so HIPAA has not been violated.

The only remaining question concerns costs. Defendants submitted a bill of costs running to about $96,000; the district court awarded about $39,000. *Phillips v. WellPoint, Inc.*, 2013 U.S. Dist. LEXIS 69830 (S.D. Ill. May 16, 2013). Appellants do not contend that any of the awarded costs was improper under 28 U.S.C. §1920 or that defendants needlessly ran up the costs in this suit. Instead they maintain that, because defendants' conduct in replacing the RightCHOICE policy with the more expensive UniCare policy was "reprehensible", the losing side should not have to pay costs. Yet Fed. R. Civ. P. 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party. The district court did not abuse its discretion in implementing that presumption.

Plaintiffs demanded many million dollars; a high-stakes suit does not come cheap to either side. Despite losing *Cima*, the law firm tried again in the hope that a different forum would produce a different answer. After finding itself back in the original forum and before the judge who had decided *Cima*, the law firm did not economize. It could have asked the district court to enter the same opinion as in *Cima* in order to set up an appeal; instead it launched a new round of discovery and proceeded to litigate as if *Cima* did not exist. No wonder the defendants incurred substantial costs.

Law firms representing would-be class representatives have portfolios of suits. Some will be settled for considerable sums; others will fail. Paying the costs of failure is part of being in this business. See *Rand v. Monsanto Co.*, 926 F.2d 596 (7th Cir. 1991) (observing that class counsel properly agree to bear the costs of suit, rather than leaving them with the

figurehead representatives); see also *White v. Sundstrand Corp.*, 256 F.3d 580, 586 (7th Cir. 2001). Counsel should thank their lucky stars that the district court did not sanction them under 28 U.S.C. §1927 for filing a second suit rather than pursuing the first through appeal.

AFFIRMED