In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-3338

HELBACHS CAFÉ LLC,

*Plaintiff-Appellant,*

*v.*

CITY OF MADISON, *et al.*,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:20-cv-758 — **William M. Conley**, *Judge.*

———————————

ARGUED MAY 27, 2022 — DECIDED AUGUST 15, 2022

———————————

Before ST. EVE, KIRSCH, and JACKSON-AKIWUMI, *Circuit Judges.*

KIRSCH, *Circuit Judge.* After the public health department for the City of Madison and Dane County, Wisconsin issued a COVID-19 mask mandate, an owner of Helbachs Café posted a sign: "Mask Free Zone. Please remove mask before entering" and then took it down about 30 minutes later. Over the next few days, Madison's public health officials cited Helbachs several times for violating its COVID-19 orders, and

then set a hearing to revoke Helbachs' food and drink license for cumulative violations. Helbachs sued the City of Madison, the County of Dane, Madison Assistant City Attorney Marci Paulsen, and employees of the health department, all in their official capacities, under 42 U.S.C. § 1983, claiming that the defendants retaliated against Helbachs in violation of the First Amendment for posting its anti-mask sign. Before the district court, Helbachs conceded that its claims against the individual defendants were duplicative of the claims against the municipal defendants because it was only pursuing theories of liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The citations were later dismissed, and the revocation hearing was not pursued. The first issue we must decide, then, is whether Helbachs has standing to bring this First Amendment retaliation claim. We conclude that it does because the record shows that Helbachs suffered injury-in-fact beyond the revoked citations and the threatened, but aborted, hearing. However, Helbachs' First Amendment claim fails under *Monell* because the defendants' actions were not part of a larger pattern or practice of retaliation. We affirm the district court's grant of summary judgment to the defendants.

I

During the early stages of the COVID-19 pandemic, on July 7, 2020, Public Health Madison and Dane County (PHMDC)—the health department for the city and the county—issued Emergency Order #8 (Order 8), which included many COVID-19 provisions, including a requirement for businesses to adhere to a mask mandate ("Every individual, age five (5) and older, in Dane County must wear a face covering that covers their nose and mouth when: … [i]n any

enclosed building where other people, except for members of the person's own household or living unit, could be present"). Another requirement of Order 8, posted only on PHMDC's website, required businesses to post a "Masks Required" sign.

On July 13, the day Order 8 went into effect, Casey Helbach, an owner of family owned and operated Helbachs Café, posted a paper sign in the window of his café, reading, "Mask Free Zone. Please remove mask before entering." The sign was posted for roughly 30 minutes before Casey voluntarily took it down. Someone—unaffiliated with Helbachs—took a picture of the sign while it was up and posted it online. That post went viral. The same day, PHMDC received over 100 complaints (many being second-hand reports of the social media post) against Helbachs and sent employees to investigate Helbachs' compliance with Order 8.

Over the next few days, PHMDC ended up citing Helbachs three times for noncompliance with Order 8 (for failing to post required signage and for failing to enforce the mask requirement). Helbachs disputed the validity of all three citations, claiming the café was not out of compliance. On August 3, based on PHMDC's determination that Helbachs had continued to violate Order 8, the Dane County Sheriff served Helbachs with a Notice of Intent to Revoke License (the Notice), putting Helbachs' food and drink license in jeopardy. To avoid revocation, the Notice required compliance with Order 8, as well as "[r]efraining from posting or communicating that the premises is a 'mask free zone'." The Notice said that a hearing would be held on the revocation, which was later set for August 25.

A very public disagreement ensued. The viral social media post about the sign, plus the issuance of the citations, drew

attention and cultivated what Helbachs' landlord Terrence Wall described as "a negative atmosphere" in the shopping center housing the café, including at least three protests in front of Helbachs. Online and local media covered the disagreement, complete with a Madison assistant city attorney issuing on-camera statements about the dispute. Helbachs created a GoFundMe page to help fund a lawsuit against PHMDC, where the Helbachs spoke out against PHMDC and Order 8. Eventually, Wall said that the mounting complaints, disruptions from protestors, and threats of boycotting his shopping center (due to his "guilt by association" with Helbachs) combined with PHMDC's Notice that would revoke Helbachs' food and drink license, led to Wall's decision not to renew Helbachs' lease, requiring Helbachs to leave the space by August 31, 2020.

Meanwhile, on August 10, Helbachs filed a complaint against the City of Madison, County of Dane, Madison Assistant City Attorney Marci Paulsen, and PHMDC employees Janel Heinrich and Bonnie Koenig, all three individuals in their official capacity, in Dane County Circuit Court, seeking damages for a violation of Helbachs' First Amendment rights, and an injunction prohibiting the defendants from selectively enforcing the signage requirement and from bringing any enforcement action against them, among other federal and state claims (which we do not mention further because Helbachs does not pursue them on appeal). Two days later, the defendants removed the case to federal court.

On August 14, the parties jointly requested to mediate their dispute, and a settlement conference was set for August 18. Although the parties did not reach full and final settlement, Helbachs struck its request for a preliminary injunction

on August 19 based on a stipulation that the citations and the hearings related to the Notice would be dismissed. In turn, around August 20, PHMDC cancelled the revocation hearing and dismissed the Notice and citations entirely.

Back in federal court, in spring 2021, both parties moved for summary judgment. In November 2021, the district court granted summary judgment to the defendants on all federal claims, finding in relevant part that Helbachs had failed to put forth evidence sufficient to establish a violation of § 1983 under *Monell*, and that regardless, the defendants did not violate Helbachs' First Amendment rights because Helbachs' asserted speech was not protected speech. The district court declined to exercise supplemental jurisdiction over the state law claims and remanded those claims to state court. Helbachs now appeals only the grant of summary judgment on its First Amendment retaliation claim for damages under *Monell*.

II

The relationship between the defendants and Helbachs has changed considerably since Helbachs sued in state court in August 2020, raising questions over whether we have jurisdiction. See *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 461 (7th Cir. 2020) (we have an independent obligation to assure ourselves of jurisdiction). Helbachs framed its case around two injuries for which it sought damages: the citations and the Notice. But with both now dismissed, and no fine collected, the briefs lacked information on any injury Helbachs ever suffered which damages would redress. Without any injury, Helbachs would not have standing to pursue its retaliation claim. See *Casillas v. Madison Ave. Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019) ("If the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy,

there is no case or controversy for the federal court to re-
solve.").

A plaintiff suffers an injury redressable with damages
when the defendants' actions violate the law, *when and if* that
results in a harm to the plaintiff. *Ewing v. MED-1 Sols., LLC,*
24 F.4th 1146, 1151–52 (7th Cir. 2022) (referencing *TransUnion
LLC v. Ramirez*, 141 S. Ct. 2190, 2209–13 (2021)). Helbachs lacks
another sort of injury that usually accompanies a retaliation
claim because it provided no evidence that its speech was
abridged due to the retaliation. Although the Notice forbade
putting the sign back up, Helbachs had no intention of doing
so (based on the record we have before us, the café took it
down voluntarily before the citations were issued). Rather, all
that remained in the appellate briefs was a naked statement
that a completed First Amendment violation—retaliation—
had occurred.

The Supreme Court has made clear that when asserting a
statutory violation, a concrete injury must be more than the
bare claim that a violation occurred. See *TransUnion*, 141 S. Ct.
at 2205 ("[U]nder Article III, an injury in law is not an injury
in fact. Only those plaintiffs who have been concretely
harmed" may sue). But the Supreme Court has not addressed
whether, if the asserted violation is the act of retaliation, that
act alone would be sufficiently concrete injury-in-fact. How-
ever, Justice Thomas' dissent in *TransUnion* suggested that it
would be, reasoning that where a law recognizes a private
right, a plaintiff asserting a violation of that right need not
separately allege harm from that violation to have Article III
standing because the offending act imports a harm to the
party. *Id.* at 2216–17 (Thomas, J., dissenting).

But we do not need to decide the contours of a First Amendment retaliation injury here. The facts in the summary judgment record show that Helbachs suffered concrete injury beyond the dismissed citations and abandoned Notice. See *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 235 (1990) (we may rely on evidence entered into "the record of the proceedings below") (internal quotations omitted); see also *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (setting out the standard of proof required at summary judgment to show standing). Exhibit 9, which is an uncontradicted affidavit from Helbachs' landlord Terrence Wall, was in the record at summary judgment, so we may consider it for standing purposes. *Meese*, 481 U.S. at 473–74 (relying on uncontradicted, detailed affidavits showing that plaintiff had standing).

In Exhibit 9, Wall states that he decided not to renew Helbachs' lease because the business was issued the Notice, and the date of Exhibit 9, August 20, 2020, shows that this decision occurred before the Notice was dismissed. There is no dispute that Helbachs did move locations after this occurred. Drawing the favorable inference from these undisputed facts that Helbachs lost its lease because of the defendants' actions, these injuries are sufficiently concrete to confer standing. See *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (parties did not dispute plaintiff's "allegations of lost sales and damage to its business reputation" and the Court held that those were injuries-in-fact sufficient to give plaintiff standing under Article III); *Meese*, 481 U.S. at 475–76, (finding traceability because "the alleged injury stems from the Department of Justice's enforcement of a statute").

III

Assured of our jurisdiction, we reach the merits of Helbachs' First Amendment retaliation claim, which, as before us on a grant of summary judgment, we review de novo. *Smith v. Dunn*, 368 F.3d 705, 708 (7th Cir. 2004). A *Monell* claim has two parts. First, as any § 1983 plaintiff must, Helbachs must show that it was deprived of a federal right. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Second, in order to hold a municipality liable for that constitutional violation, *Monell* requires a plaintiff show that the violation either (1) occurred as a result of a municipal custom or policy or (2) was committed by an individual with final policymaking authority. *Sweet v. Town of Bargersville*, 18 F.4th 273, 277 n.2 (7th Cir. 2021). We can assume without deciding that the defendants deprived Helbachs of its First Amendment rights because Helbachs' *Monell* claim fails to provide evidence sufficient to meet the latter requirement.

Helbachs does not challenge Order 8 as facially unconstitutional or argue that retaliation was the result of an action by a final policymaker. Rather, its three theories of liability rest entirely on the argument that the retaliation occurred as a result of a municipal custom or practice: (1) that Order 8 was an unconstitutional as-applied express policy because it implicitly prohibited anti-mask signs; (2) that PHMDC had a custom of pre-writing citations which resulted in constitutional deprivations; and (3) that the defendants failed to train PHMDC employees adequately resulting in the violation of Helbachs' constitutional rights. But each theory fails under the same straightforward application of the requirements for *Monell*. A plaintiff challenging a facially lawful policy (express or implied) "generally must prove a prior pattern of similar

constitutional violations resulting from the policy." *Dean*, 18 F.4th at 236 ("[W]here the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation.") (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985) (plurality) (emphasis omitted). Likewise, "*Monell* claims based on allegations of an unconstitutional municipal practice or custom ... normally require evidence that the identified practice or custom caused multiple injuries." *Chatham v. Davis*, 839 F.3d 679, 685 (7th Cir. 2016). In most cases (see below), failure to train claims are no different. See *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 379–80 (7th Cir. 2020) (a *Monell* failure to train theory requires showing the municipality had notice that gaps in its training would cause constitutional violations, and in many cases, notice is shown with "proof of a prior pattern of similar constitutional violations").

Helbachs provides no evidence of any pattern of similar violations against other businesses, for any of its theories. See *Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (concluding the plaintiff "could not show that the [municipality] had a custom or practice of sanctioning retaliation in violation of the First Amendment" because the plaintiff's evidence failed to show the municipality "condoned a continual practice" of like retaliatory acts). At oral argument, Helbachs conceded there was no evidence to this in the record but claimed that there were additional cases of similar actions taken against other businesses. But Helbachs provided nothing from the record to support this claim (nor do we know what supposed policy or custom it would support—other instances of using Order 8 to prevent

businesses from posting a sign? Of pre-writing citations? Of sending poorly trained employees out to violate rights?), so we cannot consider those alleged facts introduced at argument on appeal. See *FW/PBS, Inc.*, 493 U.S. at 235 (we cannot rely on factual representations made only for the first time in appellate briefs or at argument that are not already in the record). In turn, Helbachs' as-applied policy claim under *Monell* dies on the vine—without any evidence of a pattern or practice, no reasonable jury could find that retaliation against Helbachs occurred as a result of any municipal policy, express or implied.

Recognizing that rare circumstances arise in which the need for better training "is so obvious" that the city should have effectively been on notice, even in the absence of past violations, *J.K.J.*, 960 F.3d at 380, the defendants' public health department compliance training program presents no such obvious risk. Cf. *id.* ("[T]he need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights.") (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989)). The compliance program Helbachs takes issue with sends PHMDC employees out to conduct health inspections of restaurants, an activity that presents no obvious risk to the First Amendment rights of food and drink license-holders. Though Helbachs views the risk of unconstitutional retaliation through the issuance of citations as having been obvious, it provides no evidence to that, save for its own experience with PHMDC in this case.

AFFIRMED